[No. 32456.   Department Two.   November 12, 1953.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
HAROLD ROBY, *Appellant.*[1]

*Thos. A. E. Lally* and *Lloyd A. Eyrich,* for appellant.

*Norman A. Ericson,* for respondent.

FINLEY, J.—This is an appeal from a conviction of second-degree assault in the superior court for Pend Oreille county.

On the evening of November 30, 1951, defendant Roby was playing poker with several individuals, including the prosecuting witness Abrahamson, in a tavern at Cusick, Washington.   From time to time throughout the evening, unpleasant and angry words passed between Roby and Abrahamson.   The game broke up around midnight, the closing time for the tavern.   Abrahamson testified that he gathered up his poker chips in both hands and started for

[1]Reported in 263 P. (2d) 273.

the bar to cash them, whereupon Roby challenged him to fight. Abrahamson agreed to go outside to fight. According to his testimony, he then turned, started for the bar to cash the poker chips; Roby jumped him from behind and assaulted him with a knife. The evidence is uncontroverted that Abrahamson received multiple lacerations of the face, requiring some twenty-six stitches to close, as well as less serious cuts on his arm and shoulder. All were inflicted by a pocket knife wielded by defendant Roby.

Roby's testimony, in substance, was that, as he left the poker game, Abrahamson grabbed him and forced him towards the back of the card room. He saw a knife in Abrahamson's hand, raised his left arm to fend off the weapon, and received a wound in the hand during the process. Roby testified specifically, in part, as follows:

"Q. Then what did you do? A. When I caught his hand up like that, I held my head and my body up against him and I put my hand in my pocket and in some way opened my pocket knife that was in my pocket, and I just wildly threw the knife hap-hazardly until I got away from him."

Later, he testified:

"Q. What was your mental attitude at the time as to fear? A. I just knew my life was in danger and I was doing my best to get away from him. After I had received the cut in the hand there was nothing else to do but try to get away any way that I could. I guess I was frantic. I really don't remember the exact actions as to how I got the knife out of my pocket. I know I only had one hand to do it. I opened it in some way while I held him with my head and shoulders into his chest against that wall."

To counteract the defendant's claim of self-defense, the prosecution attempted to show that it would have been extremely difficult, if not impossible, for the defendant to have held off an assailant with one hand while simultaneously reaching in his pocket and opening a knife with the other hand. On cross-examination, the prosecution requested defendant Roby to demonstrate to the jury his version of the fight—that is, how he held Abrahamson with one hand and was able to withdraw a knife from his pocket and to open it with the other hand. At this point, in the

cross-examination by the state; the record shows that the following transpired:

"MR. LALLY: Keep your seat until I find out what he wants. MR. ERICSON: Q. I would like you to demonstrate how you got this knife open. MR. LALLY: I object to it; not proper cross examination. THE COURT: Objection overruled. THE WITNESS: I am willing. MR. LALLY: Exception. THE COURT: Exception allowed. MR. LALLY: I submit further, your Honor, the only way he can make a demonstration is to bring the complaining witness into the demonstration and make it complete. MR. ERICSON: All right. MR. LALLY: And the other five players at the table. MR. ERICSON: I am talking about the holding of the man off, the warding of the blow. Step over here. (At this point the witness left the witness box and he and the complaining witness stood in front of the jury box.) MR. ERICSON: Put this knife in your pocket. MR. LALLY: May I suggest, counsel that that knife apparently is rusty. It is not in the same condition. I tried to open the blade yesterday and couldn't. MR. ERICSON: I opened it half a dozen times. MR. LALLY: You probably opened the blade you wanted to have opened. THE COURT: Proceed. MR. ERICSON: Q. Now, if you will more or less assume the position, the guarding position, as you talk about now, with your left hand holding this man off. MR. LALLY: I submit, your Honor,—Go ahead. MR. ERICSON: Q. Assuming you are in a scuffle. We will see how long it takes you to withdraw that knife and open the blade. Go ahead; you are in the scuffle. A. My finger nails has been rotted off with trisodium phosphate, cleaning fluid. I don't have any nail (exhibiting hand to the jury.) MR. LALLY: Do the best you can. A. Well, I lit into him with my head and shoulders— MR. LALLY: May I suggest, counsel, you have your witness put his hands where they were? MR. ERICSON: Did you have your hands on him, Mr. Abrahamson? MR. ABRAHAMSON: I had my hands like that (illustrating). MR. LALLY: Just a minute. He is not testifying. THE COURT: Let the defendant have Joe Abrahamson put his hands where the defendant says his hands were. MR. ERICSON: Q. Where were they? A. (Demonstrating with the defendant:) This hand was straight up like this (illustrating) and my hand was like that (illustrating). Q. Go ahead; draw your knife? A. I put my head into— Q. Where is the knife? Was it open? A. I can't open it. My fingernails are too short. Q. Try to open it with one hand. A. I can't get

hold of the blade, my finger nail is off. Q. You say for what reason? A. I had my hands in tri-sodium phosphate cleaning fluid over at the Ford hatchery and the finger nail is curled. MR. LALLY: May he please hold up his nail and show it to the members of the jury? (Witness exhibits his hand to the jury.) THE COURT: Is that all you want. MR. ERICSON: That is all. (Witness and complaining witness resumed their respective seats.)"

Appellant's first assignment of error reads:

"The trial court abused its discretion in overruling the objection of counsel for defendant and permitting defendant to demonstrate before the jury the manner in which he opened the pocket knife on cross-examination."

In support of the above assignment of error, appellant urges the following:

"(1) Defendant described the encounter and the manner in which he obtained the knife from his pocket (St. 250). Since the date of the assault, defendant continued in his employment with the Department of Game and a chemical solution used by defendant in his employment had rotted off his finger nail, making it impossible for him to open the knife while making the demonstration (St. 274). Although the defendant was permitted to exhibit his hand to the jury, this could not overcome the doubt that would necessarily arise in the minds of the jury. The damage was done by permitting the defendant to make the demonstration.

"(2) The knife, which was admitted in evidence as State's Exhibit No. 3, was from the date of the offense until the day of the trial in the possession of the Sheriff. Upon the presentation of the knife to the defendant to be used in the demonstration, no showing was made that the condition of the knife was the same as at the time of the offense (St. 273)."

It is unquestionably within the discretion of the trial court as to whether demonstrations, experiments, and tests may be performed in the presence of the jury. *State v. Riley*, 126 Wash. 256, 218 Pac. 238. However, it is the general rule that conditions relative to a demonstration must be shown to be substantially the same as when the event in issue occurred. *Amsbary v. Grays Harbor R. & Light Co.*, 78 Wash. 379, 139 Pac. 46, 8 A. L. R. 1.

■ There might be considerable merit in appellant's assignment of error, if the reason advanced in support of it on this appeal had been clearly called to the attention of the trial court in support of an objection to the demonstration proposed by the prosecuting attorney. At the time of the trial, the defense counsel objected to the demonstration. The only ground in support of the objection stated by defense counsel was that the demonstration was "not proper cross-examination." A reference was made by defense counsel to the allegedly rusty condition of the knife, but the remark seems to have been addressed to the prosecuting attorney rather than to the court, and there was no ruling by the court, one way or the other. In *Kull v. Department of Labor & Industries*, 21 Wn. (2d) 672, 152 P. (2d) 961, it was said:

"We desire to say that, while we do not want to appear technical, we are of the opinion that neither the trial court nor this court is required to guess in regard to what testimony an objection refers to, or the reasons for such objection. A party objecting to evidence must designate the particular portion of the evidence to which he objects, and state why or wherein the evidence is improper, so as to afford the party offering the evidence an opportunity to obviate the objection or waive the testimony. Bancroft's Code Practice and Remedies, vol. 8, p. 8495. When an objection is so indefinite as not to call the court's attention to the real reason for the testimony's inadmissibility, error may not be based upon the overruling of the objection. *Coleman v. Montgomery*, 19 Wash. 610, 53 Pac. 1102. An assignment of error as to the admission of evidence upon a certain ground cannot be made where no objection to the testimony was made on that ground. *State v. Poole*, 42 Wash. 192, 84 Pac. 727. Objection to evidence can be made in this court only upon the specific ground of the objection. *Bolster v. Stocks*, 13 Wash. 460, 43 Pac. 532, 534, 1099. See, also, *Wilbur v. Taylor*, 172 Wash. 537, 20 P. (2d) 1104."

■ Appellant assigns error to the trial court's refusal to grant a new trial. In support of this assignment, he urges that, in addition to the alleged error disposed of above, the verdict of the jury is contrary to the evidence. We have reviewed the statement of facts and find that the

state's evidence, if believed, is sufficient to support the verdict. The jury was entitled to disbelieve the testimony of Roby in support of his theory of self-defense. We said in *State v. Ballard,* 158 Wash. 147, 148, 290 Pac. 703:

"The evidence offered by Hardesty disputes that presented by the state in all material particulars. The evidence of the state, if believed by the jury, and they had a right to believe it, was sufficient to sustain a conviction of the crime charged."

The judgment of the trial court is hereby affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.