[No. 36736-6-I. Division One. March 15, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. WAYNE EDUARD BURKINS, *Appellant*.

---

682

*Kelly V. Curtin* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Laura D. Hayes, Deputy*, for respondent.

KENNEDY, C.J. — Wayne Eduard Burkins appeals his first degree murder conviction and exceptional sentence. We affirm because evidence of Burkins' similar assault on another victim was admissible to prove a common scheme or plan, because the evidence was sufficient to prove premeditation, and because the trial court did not err in admitting evidence that is challenged on appeal. Moreover, under the standards set forth in RCW 9.94A.120(2), the trial court properly imposed Burkins' exceptional sentence.

## FACTS

Donna Anderson's skeletal remains were found in an embankment approximately two months after she disappeared. She was last seen alive on a Friday evening at the Horseshoe Lounge in Bellingham. That night, Burkins bought Anderson drinks and then left the bar for about 30 minutes. When he returned, he and Anderson said they were going to the Royal, a nearby tavern. Anderson did not return home that evening. Two days later, Anderson's sister filed a missing persons report.

Approximately two weeks later, Detective Mark Stokes spoke to Burkins about the missing persons report. Burkins admitted being with Anderson at the Horseshoe and the Royal that evening, but said that Anderson left the Royal with a tall man in a dark jacket. Approximately six weeks later, Detective Willis Ziebell asked Burkins to come to the police station regarding a rape complaint filed against Burkins by M.L., a woman who alleged that Burkins picked her up at a bar, smoked marijuana with her, took her to a secluded location, tied her hands, pinched her nipples, sexually assaulted her, and threatened to kill her if

she refused to obey his orders.[1] Upon his arrival, Detective Ziebell read Burkins his *Miranda*[2] rights. The police said that Burkins waived his right to an attorney and never requested that the police stop questioning him. Less than one hour later, Burkins agreed to speak to Detective Stokes again about the Anderson missing persons report. Burkins again told police that Anderson left the tavern with another man.

Despite Burkins' story, the police believed that the M.L. rape and the Anderson missing person case might be related. Accordingly, they attempted to link the cases by using two ruses while interviewing Burkins. In the first ruse, Detective Stokes told Burkins, though it was not true, that Anderson abused drugs and was a suspect in three robberies, one using a knife and one using a gun. But Burkins did not change his story. So the detectives utilized a second ruse: they told Burkins, though it was not true, that they had samples of Anderson's hair that matched hair found in the truck that Burkins had taken without the owner's knowledge to use that evening.

Burkins put his head down, started to shake, and admitted that he and Anderson had smoked marijuana in the truck that evening. Sergeant Kelsey told Burkins that, if Anderson had tried to rob him and he had resisted, she could have died from a heart attack or an overdose. Burkins then said, "You have the body, don't you?" Report of Proceedings (Jan. 26, 1995) at 317. Although the police had not yet recovered Anderson's body, Sergeant Kelsey told Burkins that they had. Burkins then gave the detectives a second version of what happened that evening.

Burkins said he left the Horseshoe to cash a check and pick up a gun from his apartment. When he returned, he drank with Anderson. After they left the Horseshoe, they smoked marijuana and then went to the Royal. This time,

[1]Burkins was ultimately tried and convicted of first degree rape of M.L. *See State v. Burkins*, No. 36735-8-I (Wash. Ct. App. Aug. 31, 1998).

[2]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).

he said that he and Anderson left the Royal together in the truck. Burkins said that while he was driving, Anderson made sexual advances toward him that he refused. Then she came at him with a knife in an attempt to rob him, causing him to drive into a ditch off the highway. Because she continued to attack him, he threatened to shoot her. Then he shot at her twice, hitting her once in the neck or chest. After Anderson's body rolled into an embankment, he threw her belongings near her body.

Detective Stokes asked Burkins to show the detectives the exact route that he and Anderson took. Burkins agreed and led them near to the scene where Anderson's body was subsequently located. Detective Stokes told Burkins he needed to know everything that had happened. Burkins said he took off Anderson's bra and pinched her nipple one time. Detective Carlotta Jarratt asked Burkins if he had told anyone what he had done. Burkins responded, "[W]ho would I tell that I just murdered someone? I mean killed." Report of Proceedings (Jan. 26, 1995) at 392.

Within 65 or 70 feet of where Burkins said Anderson's body and belongings were located, detectives found some items listed on Anderson's missing persons report. Later, they found several bones, a rope, a large mass of hair, and more of Anderson's personal belongings, including a bra that had been cut with a sharp object.

Back at the police station, Burkins told a third version of the night's events. He said that Anderson pulled her pants down and began to masturbate while they were driving in the truck. He said she had one hand on his thigh when she pulled a knife. Burkins ran the truck off the road. Then he said Anderson danced around with no pants on. He said he took out his gun and fired at her. Then he aimed at Anderson's head and fired again.

Later that evening, Detective Stokes spoke with Burkins alone and asked Burkins to clarify what happened. Burkins' eyes filled with tears and he admitted that Anderson did not have a knife. Burkins maintained that Anderson wanted to have sex with him, but he was not interested.

Then he said, "[L]ook at me, I'm bigger and stronger than she was. Who's going to believe that I had to shoot an unarmed woman[?]" Report of Proceedings (Jan. 26, 1995) at 370. Nonetheless, Burkins insisted that he shot Anderson from a distance of 12 to 18 inches because she attacked him. Speaking to Sergeant Kelsey alone, Burkins apologized for lying about the knife.

The State charged Burkins with first degree murder. At trial, the State's theory was that Burkins targeted both M.L. and Anderson to sexually assault. It theorized that Burkins ordered the women to perform sexual acts and threatened to kill them if they refused to submit and that Burkins sexually assaulted both women and allowed M.L. to live because she complied, but murdered Anderson because she resisted. After a six-day trial, a jury convicted him. Because Burkins made Anderson more vulnerable, showed no remorse for killing her, and presents a source of danger to the community, the trial court issued an exceptional sentence above the standard range. Burkins appeals.

## DISCUSSION

### I. Premeditation

▋ Burkins contends that his assault on M.L. was not admissible under ER 404(b) as evidence of premeditation. He also maintains that the State did not present sufficient evidence to prove this element beyond a reasonable doubt. "Premeditation" is defined as " 'the deliberate formation of and reflection upon the intent to take a human life.' " *State v. Gentry*, 125 Wn.2d 570, 597, 888 P.2d 1105 (quoting *State v. Ortiz*, 119 Wn.2d 294, 312, 831 P.2d 1060 (1992)), *cert. denied*, 516 U.S. 843, 116 S. Ct. 131, 133 L. Ed. 2d 79 (1995). It "involves the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." *State v. Pirtle*, 127 Wn.2d 628, 644, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026, 116 S. Ct. 2568, 135 L. Ed. 2d 1084 (1996) (citations and internal quotation marks omitted).

A. Admissibility of Assault on M.L.

ER 404(b) addresses the issue of whether evidence of crimes or misconduct other than the acts for which a defendant is charged should be admitted to prove character as a basis for suggesting that that conduct on a particular occasion was in conformity with it. Judicial Council Comment 404(b), *cited in* 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE at 365 (3d ed. 1989). Such evidence is generally inadmissible because it "could lead a jury to determine that a defendant committed the crime with which he or she is charged simply because he or she committed a similar crime in the past." *State v. Lough*, 70 Wn. App. 302, 312, 853 P.2d 920 (1993), *aff'd*, 125 Wn.2d 847, 889 P.2d 487 (1995). But it may be admissible for other purposes, such as proof of motive or plan. ER 404(b).

■■ The decision to admit evidence of other crimes or misconduct will not be disturbed on appeal absent an abuse of discretion. *Pirtle*, 127 Wn.2d at 648. But the trial court must: (1) find by a preponderance of the evidence that the misconduct occurred; (2) determine whether the evidence is relevant to a material issue; (3) state on the record the purpose for which the evidence is being introduced; and (4) balance the probative value of the evidence against the danger of unfair prejudice. *State v. Brown*, 132 Wn.2d 529, 571, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007, 118 S. Ct. 1192, 140 L. Ed. 2d 322 (1998).

Here, the trial court permitted M.L. to testify that— approximately two months after Anderson's disappearance—she was sexually assaulted by Burkins. M.L. also testified that she and Burkins smoked marijuana and that he took her to a secluded location. She said he tied her hands, bit her nipples, and threatened to kill her if she did not follow his instructions. But the trial court prohibited M.L. from testifying that Burkins raped her and that a jury found him guilty of first degree rape. Nonetheless, because Burkins had been convicted of this crime before the trial in this case, the first element—finding by a preponderance of the evidence that the misconduct occurred—is not an issue here. *Pirtle*, 127 Wn.2d at 649.

■ The State sought to prove that if Burkins' victim submitted to his sexual demands he would let her live and if she did not he would kill her, i.e., that he was motivated to kill Anderson because she refused to submit to his sexual demands. In addition, it theorized that this was a plan he thought about ahead of time as evidenced by his procurement of a weapon, means of binding his victims, and use of stealth, i.e., taking his victims to a secluded area or other place where no help would be available. Because the similarities between Burkins' assault on M.L. and his alleged assault on Anderson were numerous, a logical nexus exists between M.L.'s testimony and the fact to be established, i.e., that Burkins assaulted Anderson and then killed her when she refused to comply with his sexual demands. *State v. Peterson*, 35 Wn. App. 481, 484, 667 P.2d 645 (1983). Thus, Burkins' assault on M.L. is relevant to a material issue, the element of premeditation.

Before M.L.'s testimony, the trial court explained to the jury that this testimony was to be considered only as evidence of Burkins' motive:

> Members of the jury, you're about to hear the testimony of [M.L.]. Before this testimony is allowed, the court must instruct you that evidence of other crimes, wrongs or acts are not admissible to prove the character of a person in order to show that the person acted in conformity therewith. But such evidence is admissible and may be considered by you only as it may or may not tend to establish a motive for the defendant's actions in the case for which he's now on trial.
>
> You must not consider [M.L.]'s testimony for any other purpose other than as it may relate to the establishment of a motive. You should consider and evaluate the credibility of this evidence as you will consider and evaluate the credibility of all other evidence under the instructions I'll give you at the conclusion of the trial.

Report of Proceedings (Jan. 30, 1995) at 733.

■ Although the trial court articulated its ER 404(b) ruling only in terms of motive, these facts also have aspects

of the common scheme or plan exception to nonadmissibility. The various ER 404(b) exceptions are not always mutually exclusive; this is one such instance. In deciding whether evidence of other crimes or misconduct is admissible under ER 404(b), this court may "consider bases mentioned by the trial court as well as other proper bases on which the trial court's admission of evidence may be sustained." *State v. Powell*, 126 Wn.2d 244, 259, 893 P.2d 615 (1995). We think that common scheme or plan fits these facts more closely than motive alone.

■■ The common scheme or plan exception applies when the defendant has devised a plan and used it repeatedly to perpetuate separate but similar crimes. *State v. Krause*, 82 Wn. App. 688, 693-94, 919 P.2d 123 (1996), *review denied*, 131 Wn.2d 1007 (1997). "[A]cts which in themselves or alone carry no . . . suggestion [of design or plan] may, when multiplied, or when compared with other acts or circumstances, suggest a common plan as the explanation[.]" 2 JOHN HENRY WIGMORE, EVIDENCE § 240, at 42 (James H. Chadbourn ed., 1979). The more often that unusual and abnormal elements are present in similar instances with similar results, the less likely it is that an innocent intent underlies the abnormal elements. *Id.* § 302, at 241. Sufficient repetition of complex common features leads to a logical inference that all of the acts are separate manifestations of the same overarching plan, scheme, or design. *Lough*, 70 Wn. App. at 322-23.

This so-called "doctrine of chances" tests the likelihood that the various crimes would have so many aspects in common in the absence of an overriding common scheme or plan. *Id.* at 321-23. This reasoning underlies the State's theory here. Because the two crimes—the rape of M.L. and the killing of Anderson—had so many aspects in common, and because Burkins let M.L. live as he indicated he would when she submitted whereas Anderson was killed, it can reasonably be inferred that Anderson was killed because she refused to submit, and that this was something that Burkins premeditated, i.e., thought about in advance, based

on similarities in planning and carrying out the two crimes. We hold that there is a logical nexus. Moreover, this logical nexus defeats Burkins' argument that the admission of the ER 404(b) evidence allowed the jury to reach its verdict by speculation and conjecture. Where circumstantial evidence gives rise to a reasonable inference, there is no speculation and conjecture. Accordingly, the trial court's admission of Burkins' misconduct, i.e., his assault on M.L., may be sustained on the basis of a common scheme or plan.

Further, the trial court's limiting instruction was sufficient to restrict the jury from basing its verdict on the forbidden "once a sexual predator always a sexual predator" reasoning that ER 404(b) is designed to guard against. Thus, any unfair prejudice from this evidence was sufficiently minimized and outweighed by its probative value. We thus conclude that the trial court did not abuse its discretion in admitting evidence of Burkins' assault to prove his deliberate formation of and reflection upon his intent to take Anderson's life.

B. Sufficiency of the Evidence

■■ Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990). In a first degree murder case, "[f]our characteristics of a crime are particularly relevant to establish premeditation: motive, procurement of a weapon, stealth, and the method of killing." *Pirtle*, 127 Wn.2d at 644 (citing *Ortiz*, 119 Wn.2d at 312).

Here, the State presented evidence of Burkins' motive i.e., that he targeted women to sexually assault with a plan to kill them if they refused to submit. Supporting this theory was M.L.'s testimony that Burkins threatened to kill her if she did not perform certain sex acts, and Anderson's torn bra and shirt. As for procuring a weapon, Burkins told police that he left the Horseshoe to retrieve a gun from his

apartment before he and Anderson left together. The State also theorized that he obtained a rope at this time, with a plan to tie her up. In addition, earlier that evening, Burkins surreptitiously obtained a vehicle in which he transported Anderson to a remote area before killing her, thereby acting stealthily. Finally, as to the method of killing, Burkins told the police that he shot Anderson twice, once aiming at her head, from a distance of 12 to 18 inches.

These characteristics support an inference that Burkins caused Anderson's death with a premeditated intent to do so under RCW 9A.32.030(1)(a). Therefore, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of first degree murder, including the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning, beyond a reasonable doubt. *Rempel*, 114 Wn.2d at 82. We thus conclude that the evidence is sufficient to support the element of premeditation.

II. Admissibility of Photos and Video, Rope and Rope Demonstration

A. Admission Of Photos And Video

■ ■ Pro se, Burkins argues that photos and video of the crime scene had no probative value and that they allowed the jury to reach a decision based on emotion.[3] But "[a]ccurate photographic representations are admissible, even if gruesome, if their probative value outweighs their prejudicial effect." *State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983). The test is identical for videotapes. *State v. Stockmyer*, 83 Wn. App. 77, 84, 920 P.2d 1201 (1996) (citing *State v. Brooks*, 30 Wn. App. 280, 286, 633 P.2d 1345 (1981)). The decision whether to admit or exclude evidence lies within the sound discretion of the trial court. *State v. Russell*, 125 Wn.2d 24, 75-77, 882 P.2d 747 (1994).

■ Contrary to Burkins' contentions, the photos and

---

[3]The record contradicts the factual statement of events contained in Burkins' pro se supplemental brief. Therefore, Burkins' factual statement of events is stricken from the pro se supplemental brief. *See* RAP 10.7.

video were relevant to corroborate Burkins' statements regarding the location of Anderson's body. Nonetheless, neither the photos nor the video were designated to this court on appeal. The party seeking review has the burden of perfecting the record so that this court has before it all relevant evidence. *State v. Vazquez*, 66 Wn. App. 573, 583, 832 P.2d 883 (1992). Burkins failed to meet this burden. Nonetheless, photos and video of decomposed skeletal remains, in all likelihood, would not be unfairly prejudicial. We thus conclude that the trial court did not abuse its discretion in admitting this evidence.

B. Rope Demonstration

At trial, Dr. James Ferris, a defense witness, testified about a rope that police found underneath Anderson's jacket at the crime scene. He said that it was not used to bind Anderson because of the absence of contamination and because its loops were too large. Because the defense opened the door, the trial court permitted the State to respond to this testimony by demonstrating how the rope could have been used to bind Anderson. Pro se, Burkins contends that the trial court erred in doing so because the demonstration was prejudicial and not probative.

 The trial court has broad discretion to decide whether to permit demonstrations and experiments in the jury's presence. *State v. Roby*, 43 Wn.2d 652, 655, 263 P.2d 273 (1953); *Stockmyer*, 83 Wn. App. at 85. Evidence is relevant if a logical nexus exists between the evidence and the fact to be established. *Peterson*, 35 Wn. App. at 484; ER 401. Moreover, the burden of demonstrating unfair prejudice is on the party seeking to exclude the evidence. *Carson v. Fine*, 123 Wn.2d 206, 225, 867 P.2d 610 (1994). Evidence should be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice[.]" ER 403. Evidence is presumed admissible under ER 403. *Carson*, 123 Wn.2d at 225.

In this case, a logical nexus existed between the demonstration and the fact that Burkins bound—or intended to bind—Anderson during the sexual assault. Specifically, the

demonstration was relevant to contradict Dr. Ferris' testimony that it was not possible that Anderson was bound with the rope. Moreover, Burkins fails to demonstrate unfair prejudice. Therefore, because the probative value of this demonstration outweighs any unfair prejudice, we conclude that the trial court did not abuse its discretion in permitting the demonstration at trial.

C. Admissibility of Rope

The trial court admitted into evidence the rope, which was knotted and looped three times, that the police found at the crime scene. The State theorized that Burkins obtained the rope when he picked up his gun and planned to use it to bind Anderson's hands like he did M.L.'s. It suggested that Burkins' acts of obtaining the rope and bringing it to the scene are evidence of premeditation regardless of whether he actually used the rope to bind Anderson. At trial, experts for the State and for Burkins testified that they would likely find decomposed tissue on the rope if Anderson had been bound with it before she died. Nevertheless, police found only a trace amount of human protein around one knot. Burkins contends that the trial court erred in admitting the rope because the State presented no evidence that the rope was actually used on Anderson and because its prejudicial effect outweighed its probative value.

■ "[W]hether evidence *actually plays a part* in a crime is not the definition of relevant evidence." *State v. Quigg*, 72 Wn. App. 828, 838, 866 P.2d 655 (1994). To be relevant, and admissible at trial, evidence need only have a tendency to make the existence of a fact that is of consequence to the determination of the action more probable. ER 401. Here, the presence of the rope at the scene of the crime tends to make the State's theory that Burkins planned to bind Anderson's hands as he did M.L.'s more probable. As a result, the trial court did not abuse its discretion in concluding that the rope was relevant evidence.

Burkins' other argument, which is raised for the first time on appeal, is a bare assertion that admission of the

rope was prejudicial. Even if we were to reach the issue, this argument must fail because Burkins failed to demonstrate unfair prejudice. Although whether he actually tied Anderson's hands is not the dispositive factor,[4] allowing the rope into evidence was well within the trial court's discretion, given the evidence that the rope was there, and that M. L.'s hands had been tied. A rational trier of fact could infer that he intended to tie Anderson's hands, whether he actually succeeded in doing so or not. We thus conclude that the trial court did not abuse its discretion in admitting the rope.

## III. Burkins' Statements to Police

### A. Voluntariness and Admissibility

■■■ Burkins maintains that post-*Miranda* statements he made to the police were not voluntary because he was in custody for more than five hours and because the police deceived him. "A trial court's determination of voluntariness will not be disturbed on appeal if there is substantial evidence in the record from which the trial court could have found by a preponderance of the evidence that the confession was voluntary." *State v. Cushing*, 68 Wn. App. 388, 393, 842 P.2d 1035 (1993) (citing *State v. Ng*, 110 Wn.2d 32, 37, 750 P.2d 632 (1988)).

■■■ ■■■ A confession is coerced, i.e., not voluntary, if based on the totality of the circumstances the defendant's will was overborne. *State v. Broadaway*, 133 Wn.2d 118, 132, 942 P.2d 363 (1997). Some of the factors considered in the totality test include the defendant's physical condition, age, mental abilities, physical experience, and police conduct. *State v. Aten*, 130 Wn.2d 640, 664, 927 P.2d 210 (1996). For a statement to be admissible, the State must establish that the defendant was fully advised of his *Miranda* rights, and knowingly and intelligently waived them. *State v. Haack*, 88 Wn. App. 423, 435-36, 958 P.2d 1001 (1997) (cit-

---

[4]Although the evidence at trial was conflicting as to whether Burkins actually tied Anderson's hands, the trial judge found, at sentencing, that he did. This finding is not clearly erroneous in light of the rope demonstration given to the jury.

ing *State v. Braun*, 82 Wn.2d 157, 162, 509 P.2d 742 (1973)), *review denied*, 134 Wn.2d 1016 (1998).

 Here, the trial court held a CrR 3.5 hearing to determine the admissibility of the statements that Burkins made to the police. It heard testimony from seven police officers and Burkins, and, in its findings of fact, concluded that the police read Burkins his *Miranda* rights and that Burkins acknowledged that he understood these rights. Burkins contests the trial court's conclusion that his statements were voluntary and admissible. But because he does not challenge the trial court's findings of fact, they are verities on appeal. *Broadaway*, 133 Wn.2d at 131. Thus, the dispositive question on appeal is whether the unchallenged findings support the conclusion.

The police knowingly made untrue statements to Burkins, i.e., they said that Anderson was a suspect in three robberies and that they had recovered Anderson's body. These statements prompted Burkins, initially, to tell police that Anderson had attempted to rob him and, ultimately, to lead police to her body. Though the record indicates that police told Burkins he was free to go, Burkins argues that his statements were involuntary because his "will to resist was overcome." Appellant's Br. at 46. But he does not allege that his physical condition, age, mental abilities, or physical experience affected his decision to confess.

 Deception alone does not make a statement inadmissible as a matter of law; rather, the inquiry is whether the deception made the waiver of constitutional rights involuntary. *State v. Gilcrist*, 91 Wn.2d 603, 607, 590 P.2d 809 (1979). In such a situation, the test for voluntariness is " 'whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth.' " *Braun*, 82 Wn.2d at 161-62 (quoting *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961)). Courts have held confessions to be voluntary when police falsely told a

suspect that his polygraph examination showed gross deceptive patterns, when police told a suspect that a co-suspect named him as the triggerman, and when police concealed the fact that the victim had died. *Id.*

■ The record, viewed under the totality of the circumstances, does not support Burkins' contention that his will was overborne by the police ruses such that his confession was not freely self-determined. *Id.* at 161-62. To the contrary, the trial court's conclusion that Burkins' statements to the police were voluntary and admissible is supported by substantial evidence in the record. Thus, we will not disturb the trial court's conclusion that Burkins' statements to the police were voluntary and admissible.

B. Reading of *Miranda* Rights a Second Time

During the CrR 3.5 hearing, Burkins testified that he was advised of his *Miranda* rights at the beginning of the interview and that he understood those rights. Yet, on appeal, he argues, pro se, that the police violated his rights by failing to advise him of his *Miranda* rights prior to the interrogation that occurred thereafter and, therefore, that his statements to the police are not admissible.

■ "Where a defendant has been adequately and effectively warned of his constitutional rights, it is unnecessary to give repeated recitations of such warnings prior to the taking of each separate in-custody statement." *State v. Hubbard*, 37 Wn. App. 137, 142, 679 P.2d 391 (1984) (citing *State v. Duhaime*, 29 Wn. App. 842, 852, 631 P.2d 964 (1981)), *rev'd on other grounds*, 103 Wn.2d 570, 693 P.2d 718 (1985). Therefore, the trial court did not err in admitting the statements Burkins made to police.

IV. Exceptional Sentence

■ A sentencing court may impose an exceptional sentence outside the standard range if it finds " 'that there are substantial and compelling reasons justifying an exceptional sentence.' " RCW 9.94A.120(2); *State v. Mulligan*, 87 Wn. App. 261, 264, 941 P.2d 694 (1997), *review*

*denied*, 134 Wn.2d 1016 (1998). On appeal of an exceptional sentence, this court reviews the sentencing court's stated legal bases for issuing the sentence. *State v. Jones*, 130 Wn.2d 302, 311-12, 922 P.2d 806 (1996).[5]

Here, the sentencing court departed upward and sentenced Burkins to 720 months for the murder conviction. The standard sentencing range was 250 to 333 months and the maximum term was 20 years to life. The court imposed an exceptional sentence, listed six aggravating factors, and explained that "each and every one of the aggravating factors found by the Court, standing alone, would give just reason for imposing [this exceptional sentence.]" Clerk's Papers at 170. On appeal, Burkins assigns error to the sentencing court's conclusions that he made Anderson more vulnerable to his acts; showed no remorse for killing Anderson; and is a sexual predator who presents a danger to the community in the future.[6]

■ We review exceptional sentences answering three questions, under the respective standards of review: (1) Are the reasons given supported by substantial evidence in the record? (clearly erroneous); (2) Do the reasons justify a departure from the standard range? (de novo); and (3) Is the sentence clearly too excessive? (abuse of discretion). RCW 9.94A.210(4); *State v. Jeannotte*, 133 Wn.2d 847, 855-56, 947 P.2d 1192, (1997) (citing *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991)); *State v. Morris*, 87 Wn. App. 654, 659-60, 943 P.2d 329 (1997), *review denied*, 134 Wn.2d 1020 (1998).

A. Are the reasons given supported by substantial evidence in the record?

■ In determining any sentence, the trial court may

---

[5]Because a finding of fact that is not listed as a legal basis for issuing the sentence should not be considered on review, *Jones*, 130 Wn.2d at 311-12, we refuse to address Burkins' challenge to the sentencing court's finding that there was a profound impact on Anderson's family and friends.

[6]At the same sentencing hearing, Burkins was sentenced for the murder of Donna Anderson and the rape of M.L. The conclusions pertaining to the murder sentence are addressed here and those that pertain to the rape are addressed in *State v. Burkins*, No. 36735-8-I (Wash. Ct. App. Aug. 31, 1998).

rely on no more information than was admitted, acknowledged, or proved in a trial or sentencing. RCW 9.94A.370(2). Information presented at sentencing without objection is deemed acknowledged by the defendant. *State v. Handley*, 115 Wn.2d 275, 283, 796 P.2d 1266 (1990).

1. Vulnerability

 Victim vulnerability is an aggravating factor that supports an exceptional sentence. RCW 9.94A.390(2)(b). This court has held that a victim who uses drugs, but is not impaired by that use is not vulnerable. *State v. Crutchfield*, 53 Wn. App. 916, 923-24, 771 P.2d 746 (1989), *overruled on other grounds by State v. Chadderton*, 119 Wn.2d 390, 396, 832 P.2d 481 (1992). Here, Burkins told police that he and Anderson smoked marijuana but the record is silent regarding whether Anderson was impaired by the drug use. Accordingly, the State concedes that "this reason cannot support imposition of an exceptional sentence." Respondent's Br. at 20. We accept the State's concession.

2. Lack of Remorse

 A defendant's lack of remorse may be an aggravating factor to justify an exceptional sentence. *State v. Ross*, 71 Wn. App. 556, 563, 861 P.2d 473, 883 P.2d 329 (1993). But the lack of remorse must be of an aggravating or egregious nature. *Id.*

Here, the sentencing court found that Burkins showed no remorse for killing Anderson and actually showed contempt for her, relying upon statements made by Burkins to the police and his demeanor at trial. At sentencing, the State presented evidence of the statements made by Burkins to police officers: "I'm glad the bitch is dead," and "I hope the bitch felt a lot of pain for putting me in this position." Report of Proceedings (Apr. 12, 1995) at 45. Because Burkins did not object, these statements are deemed acknowledged by him. *Handley*, 115 Wn.2d at 283. Thus, the sentencing court properly considered them. RCW 9.94A.370(2). As additional evidence of Burkins' lack of remorse, the sentencing court noted that Burkins appeared

to be curious and fascinated with Anderson's remains during trial. It therefore concluded that this demeanor reflected his state of mind and lack of remorse.

Although RCW 9.94A.390 lists illustrative factors that "are not intended to be exclusive reasons for exceptional sentences," we are skeptical that Burkins' apparent fascination with the forensic evidence at trial was properly considered by the sentencing court. RCW 9.94A.390. Yet, because Burkins' own statements regarding Anderson— standing alone—fully support this aggravating factor, we need not decide this question. We thus conclude that it was not clearly erroneous for the trial court to rely upon lack of remorse as an aggravating factor to support his exceptional sentence.

### 3. Future Dangerousness

 Future dangerousness is an aggravating factor that may support an exceptional sentence if the underlying conviction is for a "sex offense" as defined by the Sentencing Reform Act of 1981 (SRA), RCW 9.94A.030(33), or if the State proves "sexual motivation" under RCW 9.94A.127. *State v. Halgren*, 137 Wn.2d 340, 348, 971 P.2d 512 (1999). "To impose an exceptional sentence in a sexual offense case, two conditions must be satisfied: '(1) the defendant has a history of similar criminal acts; and (2) the defendant is not likely to be amenable to treatment.' " *Id.* (quoting *State v. Strauss*, 119 Wn.2d 401, 414, 832 P.2d 78 (1992)).

Here, the State alleged that Burkins committed first degree murder with premeditated intent under RCW 9A.32.030(1)(a), and the jury convicted him of that offense. Although the State's theory at trial was that Burkins sought out Anderson to sexually assault with a plan to kill her if she resisted, first degree murder with premeditated intent is not a "sex offense" under the SRA. *See* RCW 9.94A.030(33). And the State failed to prove "sexual motivation" under RCW 9.94A.127. As a result, future dangerousness cannot support an exceptional sentence in this case. *See Halgren*, 137 Wn.2d at 348.

 Further, the record contains no evidence to indicate

whether Burkins is amenable to treatment. The only mention of treatment in the record is Burkins' presentence report, which states that Burkins "indicate[d] no history of mental health counseling or treatment." Clerk's Papers at 121. "[I]n cases where there is no . . . treatment history, . . . an exceptional sentence cannot be sustained without 'the opinion of a mental health professional that the defendant would likely not be amenable to treatment.' " *State v. McNallie*, 123 Wn.2d 585, 592, 870 P.2d 295 (1994) (quoting *State v. Pryor*, 115 Wn.2d 445, 455, 799 P.2d 244 (1990)). The record here contains no such opinion. In fact, the presentence report expressly states that a "psychological evaluation is not available for this report." Clerk's Papers at 121. Because the record contains no evidence that Burkins attempted treatment in the past, and no opinion from a mental health professional regarding his amenability to treatment, the trial court's finding of future dangerousness is not supported by substantial evidence.

Nonetheless, the trial court expressly stated that each of its reasons would support Burkins' sentence. Thus, we are confident that the trial court would have imposed the same sentence based upon lack of remorse alone. *State v. Negrete*, 72 Wn. App. 62, 71, 863 P.2d 137 (1993). Accordingly, the record supports Burkins' exceptional sentence.

B. Do the reasons justify a departure from the standard range?

As a matter of law, a reason justifies a departure from the standard range if the Legislature did not consider it in establishing the standard range and if it is sufficiently substantial and compelling to distinguish the offense in question from others in the same category. *State v. Way*, 88 Wn. App. 830, 833, 946 P.2d 1209 (1997), *review denied*, 135 Wn.2d 1002 (1998); *Morris*, 87 Wn. App. at 659-60. The components that are used to compute the standard range are the defendant's criminal history and the seriousness level of the offense. *State v. Nordby*, 106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986).

Here, the reason relied upon by the sentencing court

that is supported by the record—lack of remorse—does not reflect criminal history or the seriousness level of the offenses. Thus, it was not considered by the Legislature in computing the standard range for the murder sentence. Accordingly, we conclude that this reason is adequately substantial and compelling to justify the exceptional sentence.

C. Is the sentence clearly too excessive?

Once proper grounds for an exceptional sentence are established, the length of the sentence is reviewed for an abuse of discretion. *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986). Reviewing courts have "near plenary discretion *to affirm* the length of an exceptional sentence, just as the trial court has all but unbridled discretion in setting the length of the sentence." *State v. Bedker*, 74 Wn. App. 87, 101-02, 871 P.2d 673 (1994) (citations omitted). When no improper reasons are involved, a "sentence is excessive only if its length, in light of the record, 'shocks the conscience.' " *State v. Vaughn*, 83 Wn. App. 669, 681, 924 P.2d 27 (1996) (citations omitted), *review denied*, 131 Wn.2d 1018 (1997). The only limit to the trial court's discretion is that it must remain within the statutory maximum. *State v. Creekmore*, 55 Wn. App. 852, 866, 783 P.2d 1068 (1989).

Our Supreme Court has explained that the sentencing court need not state reasons to justify the length of the sentence imposed. *State v. Ritchie*, 126 Wn.2d 388, 395, 894 P.2d 1308 (1995) (citing *Ross*, 71 Wn. App. at 573). Nonetheless, Burkins asserts that this rule "runs afoul of settled principles of statutory construction and of federal due process." Appellant's Br. at 58. Accordingly, he asks us not to follow *Ritchie*. Though *Ritchie* did not expressly discuss statutory construction or due process, the particular concerns raised by Burkins were necessarily considered by the *Ritchie* court. In addition, unless our Supreme Court decides to overrule itself, this court is bound by its rulings. *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997) (citing *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227, 39

A.L.R.4TH 975 (1984)). We therefore reject Burkins' arguments and follow *Ritchie*. Accordingly, the sentencing court's failure to justify the length of the sentence does not constitute an abuse of discretion.

Here, Burkins' sentence is 2.2 times the upper end of the standard range, but it remains within the statutory maximum term of life. In the presence of aggravating factors, we have affirmed sentences over three times the top of the standard range. *See State v. Smith*, 82 Wn. App. 153, 167, 916 P.2d 960 (1996); *State v. Overvold*, 64 Wn. App. 440, 450, 825 P.2d 729 (1992). Here, Burkins' exceptional sentence was shorter than the statutory maximum life term and was supported by the additional factor of lack of remorse. In addition, there were no mitigating factors. In light of the record, the length of Burkins' sentence—even when considered in conjunction with the exceptional rape sentence, which is to be served consecutively—does not "shock the conscience" and is therefore not excessive. *Vaughn*, 83 Wn. App. at 681. Thus, the trial court did not err by imposing the exceptional sentence.

In sum, we affirm Burkins' conviction of first degree murder and his exceptional sentence.

GROSSE and WEBSTER, JJ., concur.

Review denied at 138 Wn.2d 1014 (1999).