153 P.3d 894 (2007)
STATE of Washington, Respondent,
v.
L.U., b.d. 02-17-89, Appellant.
No. 57407-8-I.
Court of Appeals of Washington, Division 1.
March 5, 2007.
*895 Dana M. Lind, Nielsen Broman Koch PLLC, Attorney at Law, Seattle, WA, for Appellant.
Prosecuting Atty. King County, King Co. Pros./App. Unit Supervisor, Yarden F. Weidenfeld, King County Prosecutor, Seattle, WA, for Respondent.
AGID, J.
¶ 1 L.U. was convicted of taking a motor vehicle without permission and vehicle prowling after he confessed to writing graffiti in a stolen car. He contends that his confession should not have been admitted at trial because it was coerced by a detective's promise that L.U. would not be charged with a crime *896 for the graffiti. L.U. also argues that his two convictions violate the merger doctrine. Because we conclude that the detective did not coerce L.U. into confessing and the Legislature did not intend that L.U.'s two crimes merge, we affirm.
¶ 2 On February 7, 2005, someone stole Jean Layer's Honda Civic. When police recovered it two days later, the steering column and ignition were damaged. Someone had written on the dashboard: "Fuck Officer [sic] Gilette [sic] 4rm C-loc, Bear, Bam Bam, Don't trip."
¶ 3 Three months later, King County Sheriff Deputy Timothy Gillette arrested L.U. on an outstanding warrant. Deputy Gillette, who had been the target of threats made in other graffiti similar to that found in Layer's car, had information that L.U. and some of his friends were involved in gang activity that included graffiti. The deputy asked Detective Ryan Mikulcik to talk to L.U. about the graffiti and the threats toward Deputy Gillette. Detective Mikulcik had known L.U. since L.U. was in middle school, and the two were friendly. Detective Mikulcik, unarmed and wearing plain clothes, brought L.U. to a 4 × 4 foot interview room and read him his rights.
¶ 4 L.U. denied writing the graffiti, but Detective Mikulcik thought that L.U.'s handwriting was similar to the writing in Layer's car. When Detective Mikulcik asked L.U. what "4rm" meant, L.U. said that was how he writes "from."
¶ 5 Detective Mikulcik told L.U. that he would not charge L.U. for writing the graffiti in the car if L.U. gave him information about another incident involving graffiti. L.U. thought the detective meant that he would not be charged with any crime related to the car. He then confessed to writing the graffiti on the dashboard:
I was in a Honda Civic that was stolen. I was in the passenger seat and I cannot remember who was driving. I have been in many stolen cars and I know this one was stolen because the ignition was damaged. I used a marker and wrote on the dash board "Fuck Officer Gilette [sic] 4rm c-loc, bear bam bam, don't trip." I have not written anything else about Officer Gillette and have never written anything threatening. This is the only thing I have written about him. I hope it wasn't taken as a threat or the wrong way.
¶ 6 The State charged L.U. by second amended information with one count of second degree taking a motor vehicle without permission and one count of second degree vehicle prowling. Before trial, L.U. asked the court to suppress his confession. He argued that Detective Mikulcik coerced him into confessing by promising not to charge him with a crime. Both L.U. and Detective Mikulcik testified at the suppression hearing. Afterward, the court admitted L.U.'s confession and found him guilty as charged.
¶ 7 L.U. first argues that the trial court erred when it denied the motion to suppress his confession. A confession is involuntary or coerced if, based on the totality of the circumstances, the defendant's will was overborne. State v. Broadaway, 133 Wash.2d 118, 132, 942 P.2d 363 (1997); State v. Burkins, 94 Wash.App. 677, 694, 973 P.2d 15, review denied, 138 Wash.2d 1014, 989 P.2d 1142 (1999). Some of the factors we consider when deciding whether a statement was voluntary include the defendant's age, mental condition, physical condition, and experience. Burkins, 94 Wash.App. at 694, 973 P.2d 15. The court must also consider the conduct of the interrogating officers and any promises or misrepresentations they made. Broadaway, 133 Wash.2d at 132, 942 P.2d 363. Even if a police officer deceived the defendant to obtain a confession, however, the statement is voluntary unless the officer's behavior overcame the defendant's will to resist. Burkins, 94 Wash.App. at 695, 973 P.2d 15. "The inquiry is whether the Defendant's will was overborne." Broadaway, 133 Wash.2d at 132, 942 P.2d 363.
¶ 8 If there is substantial evidence in the record from which the trial court could have found by a preponderance of the evidence that the confession was voluntary, we will not disturb the trial court's determination of voluntariness on appeal. Burkins, 94 Wash.App. at 694, 973 P.2d 15. Findings of fact entered following a CrR 3.5 hearing, if *897 unchallenged, are verities on appeal. Burkins, 94 Wash.App. at 695, 973 P.2d 15.
¶ 9 After L.U.'s CrR 3.5 hearing, the trial court found that although L.U. first denied having written the graffiti on the dashboard, he admitted writing it after Detective Mikulcik said he would not be charged "with the graffiti to the dashboard." Because L.U. does not challenge that finding, it is a verity. Burkins, 94 Wash.App. at 695, 973 P.2d 15. L.U. argues that his confession was the direct result of Detective Mikulcik's promise of immunity. But, as the court found, the detective promised immunity only for the graffiti. He did not promise immunity for any other crimes relating to Layer's car.
¶ 10 L.U. contends it was reasonable for him to believe that the offer of immunity applied to all charges relating the car. He cites a federal case from the Seventh Circuit for the rule that "[a] defendant's perception that he is providing testimony under a grant of immunity does not make his statement involuntary, unless the perception was reasonable." United States v. Cahill, 920 F.2d 421, 427 (7th Cir.1990), cert. denied, 500 U.S. 934, 111 S.Ct. 2058, 114 L.Ed.2d 463 (1991). But L.U.'s perception was not reasonable. Detective Mikulcik interviewed L.U. only to find out about threats made toward Deputy Gillette. The detective testified that he and L.U. did not talk about car theft or any other crimes. Even when L.U.'s attorney asked him whether the detective told him he was investigating a stolen car, L.U. responded, "He said  he just asked me about this car, and then he just asked me about some other graffitis [sic] and (inaudible) I don't know." L.U. then said he could not remember whether Detective Mikulcik told him the car was stolen.
¶ 11 L.U. may have believed that he would not be charged with any crimes relating to Layer's car if he confessed to writing the graffiti. But his mistaken belief was unreasonable and he did not confess because Detective Mikulcik misrepresented his intentions. Considering the totality of circumstances, L.U.'s confession was voluntary. The trial court properly admitted it.
¶ 12 L.U. next contends that his convictions for second degree taking a motor vehicle without permission and second degree vehicle prowling violate the merger doctrine. We disagree. Merger is a judicial doctrine used to determine whether the Legislature intended to impose multiple punishments for an act that violates more than one statute. State v. Eaton, 82 Wash.App. 723, 729, 919 P.2d 116 (1996). The doctrine applies only
where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping). . . .
State v. Vladovic, 99 Wash.2d 413, 421, 662 P.2d 853 (1983). Thus, it applies where a crime is elevated to a higher degree by proof of an act that is prohibited elsewhere in the criminal code. Eaton, 82 Wash.App. at 730, 919 P.2d 116.
¶ 13 Vehicle prowling does not elevate the crime of taking a motor vehicle without permission to a higher degree. To convict L.U. of taking a motor vehicle without permission in the second degree, the State must prove that he,
without the permission of the owner or person entitled to possession, intentionally takes or drives away any automobile or motor vehicle . . . that is the property of another, or he or she voluntarily rides in or upon the automobile or motor vehicle with knowledge of the fact that the automobile or motor vehicle was unlawfully taken.
RCW 9A.56.075. To be guilty of second degree vehicle prowling, the defendant must enter or remain unlawfully in a vehicle "with intent to commit a crime against a person or property therein[.]" RCW 9A.52.100. Vehicle prowling does not elevate the taking a motor vehicle crime to a higher degree. The merger doctrine does not apply.
¶ 14 We recognize that Division Three of this court held to the contrary in State v. Lass, 55 Wash.App. 300, 777 P.2d 539 (1989). Like L.U., Lass was convicted of taking a *898 motor vehicle without permission[1] and second degree vehicle prowling. In Lass, the court acknowledged that under the merger doctrine,
when an offense is proven which elevates another crime to a higher degree, "an additional conviction cannot be allowed to stand unless it involves some injury to the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element."
Lass, 55 Wash.App. at 308, 777 P.2d 539 (quoting State v. Johnson, 92 Wash.2d 671, 680, 600 P.2d 1249 (1979), cert. dismissed, 446 U.S. 948, 100 S.Ct. 2179, 64 L.Ed.2d 819 (1980)). Despite that acknowledgment, the Lass court concluded that second degree vehicle prowling and taking a motor vehicle without permission merged because "no additional steps were necessary to complete both charges." Lass, 55 Wash.App. at 308, 777 P.2d 539. Because that is not the test for applying the merger doctrine, we disagree with the court's reasoning in Lass. In any event, Lass would not be persuasive in L.U.'s case because L.U.'s criminal act involved an injury to property (the graffiti on the dashboard) that was not merely incidental to the crime of taking a motor vehicle without permission.
¶ 15 L.U.'s arguments on appeal fail. His judgment and sentence is affirmed.
WE CONCUR: DWYER and GROSSE, JJ.
NOTES
[1] L.U. was found guilty of second degree taking a motor vehicle without permission. When Lass committed his crimes, there were no higher or lower degrees of the crime of taking a motor vehicle without permission. See former RCW 9A.56.070 (1987).