2014 JUN 16  AM 9: 09



IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 71647-6-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMES BRADLEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 16, 2014 |

SPEARMAN, C.J. — James Bradley appeals his conviction and sentence for second degree assault while armed with a deadly weapon, malicious mischief in the third degree, theft in the third degree, vehicle prowling in the second degree, and obstructing a law enforcement officer. He argues that the evidence was insufficient to support the deadly weapon enhancement, the theft conviction, and the obstruction conviction; that it violated double jeopardy to punish him for both vehicle prowl and theft; and that the trial court impermissibly imposed legal financial obligations. In a statement of additional grounds, Bradley argues that the prosecutor committed misconduct by misstating the definition of assault.

## FACTS

Sage Sanchez hired James Bradley to repair Sanchez's father's motor home. On September 12, 2012, Sanchez went to Bradley's house in Tacoma to pay Bradley $540 for work he had done repairing Sanchez's father's motor home the previous week.

Bradley told Sanchez he needed to be paid an additional $75 for work he did two days prior, so he could pay his bills. Sanchez told Bradley he would receive the rest of the money as soon as Sanchez's father deposited another check. Bradley said "'I see how this is going to go.'" Verbatim Report of Proceedings (VRP) (12/04/12) at 187. He went into his house and retrieved an aluminum baseball bat. Bradley then told Sanchez, "'[y]ou're going to pay me, or I'm going to take out every cent or every dollar on this truck.'" VRP (12/4/12) at 188. Bradley hit the truck with the bat three times, leaving dents. Sanchez was one or two feet away when Bradley began hitting the truck. Bradley then chased Sanchez around the truck with the bat raised, demanding to be paid.

Sanchez went across the street and asked a neighbor if he could go inside her house to call 911. She said no. Sanchez saw Bradley coming towards him with the bat, so he went to the opposite side of the car parked in front of the neighbor's house. Sanchez walked around the car quickly two or three times, trying to keep away as Bradley continued to chase him with the bat raised. Sanchez testified that he was afraid because "someone his size, if you get hit in the head with the bat at a full swing, you can probably die." 12/4/12 RP 201. However, Sanchez said Bradley never swung the bat at him.

Sanchez then said "'[f]ine. I'll pay you. Just, just stop. You need to stop.'" VRP (12/4/12) at 201. Bradley then walked back towards Sanchez's truck and said he was going to take Sanchez's leaf blower as collateral. Bradley removed the leaf blower from Sanchez's truck and placed it on the porch. Bradley then reached into the truck through the driver's window, removed the keys from the ignition, went into the house, and dropped the keys on the couch, and left.

2

Police officers arrived quickly in response to 911 calls from several neighbors who witnessed the incident. Police searched the area looking for Bradley but were initially unable to find him. Elizabeth Blankenship, who lived at the same house as Bradley, received a text message from Bradley telling her that he was in the backyard tool shed and asking her to let him know when the police left. Blankenship notified the police. Two police officers knocked on the tool shed door, announced "Tacoma police, if someone is in there, come out with [your] hands up." VRP (12/5/12) at 345-46. There was no reply. They entered the tool shed and found Bradley.

Bradley was arrested and charged with one count of assault in the second degree while armed with a deadly weapon, one count of malicious mischief in the third degree, one count of theft in the third degree, one count of obstructing a law enforcement officer, and one count of vehicle prowling in the second degree. A jury found Bradley guilty as charged. Bradley received a standard range sentence of 14 months for second degree assault, consecutive to 12 months for the deadly weapon enhancement, and consecutive terms of two months for each of the four gross misdemeanor convictions. Bradley appeals.

## DISCUSSION

Bradley argues that the evidence was insufficient to find him guilty of the deadly weapon sentence enhancement, obstructing a police officer, or third degree theft. "When reviewing the sufficiency of the evidence to support a conviction, 'the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Myles, 127 Wn.2d 807, 816, 903 P.2d 979 (1995), quoting State v. Joy,

3

121 Wn.2d 333, 338, 851 P.2d 654 (1993). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Theroff, 25 Wn. App. 590, 593, 608 P.2d 1254 (1980)).

## Deadly Weapon

Bradley does not challenge his conviction for second degree assault with a deadly weapon. Rather, he argues that the evidence was insufficient to impose a deadly weapon sentencing enhancement. When used as a means of committing second degree assault, a "deadly weapon" is defined as an explosive, firearm, or "any other weapon, device, instrument, article, or substance ... which, under the circumstances in which it is used, ... is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6); see RCW 9A.36.021(1)(c). In contrast, if an instrument is not on the statutory list of per se deadly weapons, it qualifies as a "deadly weapon" for sentencing enhancement purposes only if it "has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.825. Baseball bats are not on the statutory list of per se deadly weapons. Thus, Bradley argues that the baseball bat does not qualify as a "deadly weapon" for sentencing enhancement purposes because there is insufficient evidence that he used it in a manner that was likely to produce or may easily and readily produce death. Whether a weapon is deadly is a question of fact, which the State must prove beyond a reasonable doubt. State v. Tongate, 93 Wn.2d 751, 754, 613 P.2d 121 (1980).

We need not reach the question of whether Bradley used the aluminum bat in a manner that was likely to produce or may easily or readily produce death. Jury Instruction No. 34 stated in relevant part:

> A deadly weapon is an implement or instrument that has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are examples of deadly weapons: blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and <u>any metal pipe or bar used or intended to be used as a club</u>.

CP at 85 (Emphasis added.) The second sentence of this instruction provided the jury with the statutory list of deadly weapons per se, and the first sentence provided them with the statutory definition for deadly weapons that are not included on the per se list. RCW 9.94A.825. Bradley did not object to this instruction. Therefore, the jury was entitled to consider whether the aluminum bat was a deadly weapon under either prong of the definition. The jury could have found that an aluminum bat qualifies as a deadly weapon per se because it meets the definition of "any metal pipe or bar used or intended to be used as a club." We uphold the deadly weapon sentencing enhancement.

## Obstruction

Bradley argues that his conviction for obstructing a law enforcement officer must be reversed because he had a constitutionally protected right to refuse warrantless police entry into the shed where he was hiding.[1] He contends that "passive refusal to

---

[1] "A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1).

consent to a warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing." U.S. v. Prescott, 581 F.2d 1343, 1351 (9th Cir. 1978). The State argues that the right to refuse a warrantless entry does not apply to toolsheds on other people's property. This argument lacks merit, because the record clearly shows that Bradley was hiding in a shed in his own backyard.

However, Bradley did not move to dismiss the obstruction charge below based on his right to refuse warrantless police entry into his shed. The record shows that defense counsel merely made a cursory oral motion to dismiss the charge based on insufficient evidence, which the trial court promptly denied without further argument.[2] Under RAP 2.5(a), an issue first raised on appeal may be reviewed by an appellate court where it is a manifest error affecting a constitutional right. For this exception to apply, Bradley must show that "(1) the error implicates a specifically identified constitutional right, and (2) the error is 'manifest' in that it had 'practical and identifiable consequences' in the trial below." State v. Bertrand, 165 Wn. App. 393, 400, 267 P.3d 511 (2011) review denied, 175 Wn.2d 1014, 287 P.3d 10 (2012). We cannot conclude that the alleged error is "manifest." Bradley's argument is based on the premise that, absent a warrant, he was not obligated to respond to the officer's commands. But it is not clear that police needed a warrant in this situation. Bradley's housemate Elizabeth Blankenship testified that she gave consent for the police to search the home, and told them that Bradley was hiding in the shed. Nor is it clear that Bradley had a reasonable

---

[2] The State correctly observes that Bradley does not challenge the sufficiency of the evidence as to any of the elements of the crime of obstructing a law enforcement officer. He carefully couches his argument in terms of the insufficiency of the evidence based on his constitutional right to refuse warrantless entry, without assigning error or arguing that the evidence was otherwise insufficient to support the conviction. Accordingly, we do not address the question of whether Bradley's behavior was sufficient to support the obstruction conviction.

6

expectation of privacy in the shed. Because the warrantless entry issue was not raised below, the record on these fact-specific issues is undeveloped. Accordingly, we cannot further analyze the warrantless entry question. "RAP 2.5(a) does not mandate appellate review of a newly-raised argument where the facts necessary for its adjudication are not in the record and therefore where the error is not 'manifest'." State v. Riley, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

## Theft

"Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services. . . ." RCW 9A.56.020(1)(a). "A person is guilty of theft in the third degree if he or she commits theft of property or services which (a) does not exceed seven hundred and fifty dollars in value. . . ." RCW 9A.56.050(1).

Bradley contends that there was insufficient evidence of his intent to deprive Sanchez of the leaf blower and truck keys because he merely moved the leaf blower to the front porch, dropped the keys on the couch, and then left the home, knowing that Sanchez was nearby and could easily recover the items. See State v. Walker, 75 Wn. App. 101, 879 P.2d 957 (1994), Bradley asserts that theft requires a taking with the intent to deprive the owner of the property for a substantial period of time. Bradley is mistaken. In Walker, the court held that the statutes regarding taking a motor vehicle without permission and theft in the first degree are not concurrent. In reaching that holding, the court noted that "the joyriding statute proscribes the initial unauthorized use of an automobile, while the theft statute proscribes the continued or permanent unauthorized use of an automobile." Id. at 108. Walker cannot be read as support for

7

the proposition that there is a minimum period of time that must pass before the intent element of theft is established.

Moreover, Bradley's argument that he lacked the intent to deprive because Sanchez could have easily returned to Bradley's house to collect the leaf blower and keys is not persuasive. Sanchez fled the scene after Bradley chased him with a baseball bat. Witnesses testified that Bradley removed the leaf blower from Sanchez's truck and placed it on the porch, and that he removed the keys from Sanchez's truck, brought them inside, and dropped them on the couch. Sanchez testified that he did not give Bradley permission to do this. The evidence is sufficient to support the conviction.

Bradley further argues that reversal is required because the jury heard evidence of two separate alleged takings and it was not instructed that it must unanimously agree on the act constituting the theft. Where multiple acts are alleged, any one of which could constitute the crime charged, the State must either elect the act on which it relies, or the court must instruct the jury that they must reach a unanimous verdict on at least one particular criminal act. State v. Kitchen, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). However, no unanimity instruction is required if the acts were part of a continuing course of conduct. State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). "To determine whether there is a continuing course of conduct, we evaluate the facts in a commonsense manner including (1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose." State v. Brown, 159 Wn. App. 1, 14, 248 P.3d 518 (2010). Here, it is clear that the theft of the leaf blower and keys were a continuing course of conduct. The takings occurred consecutively during the same incident, between the same parties at the same location,

and were for the purpose of extracting value from Sanchez. Moreover, there was ample evidence to support a conviction on both counts. Kitchen, 110 Wn.2d at 412 (unanimity instruction required where a rational juror could have entertained reasonable doubt as to whether one or more of the acts occurred). No unanimity instruction was required.

## Double Jeopardy

Bradley argues that his convictions for third degree theft and second degree vehicle prowling violated double jeopardy. "We review alleged double jeopardy violations de novo." State v. Lust, 174 Wn. App. 887, 890, 300 P.3d 846 (2013).

The state and federal double jeopardy clauses protect a defendant from being punished multiple times for the same offense. State v. Adel, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998). "Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense." In re Orange, 152 Wn.2d 795, 815, 100 P.3d 291 (2004).

Here, because the statutes do not expressly disclose legislative intent, we apply the "'same evidence'" test to determine whether the prohibition against double jeopardy has been violated. Orange, 152 Wn.2d at 816. "Under the 'same evidence' test, offenses are not constitutionally the same and double jeopardy does not prevent convictions for both offenses if each offense, as charged, includes an element not included in the other and proof of one offense would not necessarily prove the other." State v. Fuentes, 150 Wn. App. 444, 450, 208 P.3d 1196 (2009) (citing State v. Calle, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). "We are to consider the elements of the

crimes both as charged and as proved." State v. Nysta, 168 Wn.App. 30, 47, 275 P.3d 1162 (2012), review denied, 177 Wn.2d 1008, 302 P.3d 180 (2013)).

Bradley argues that the same evidence test applies because the two crimes were based on the act of reaching into Sanchez's truck to remove the keys.[3] To convict Bradley of theft in the third degree, the State was required to prove that he wrongfully obtained or exerted unauthorized control over the property or services of another, valued at $750 or less, with intent to deprive the owner thereof. RCW 9A.56.050(1); RCW 9A.56.020(1)(a). To convict Bradley of second degree vehicle prowling, the State was required to prove that he entered or remained unlawfully in a vehicle with intent to commit a crime against a person or property therein. RCW 9A.52.100(1). Under the facts of this case, the evidence required to support the conviction for third degree theft was sufficient to also convict Bradley of second degree vehicle prowling. But each crime requires proof of an element that is not necessary to prove the other. It is possible to commit third degree theft without unlawfully entering a vehicle, and it is possible to commit second degree vehicle prowling without wrongfully obtaining or exerting unauthorized control over the property of another. This demonstrates legislative intent that the act of unlawfully entering a vehicle be punished in addition to other criminal acts that may be committed therein. Thus, the crimes are not identical in law, and double jeopardy was not violated under the same evidence test.

---

[3] Because the leaf blower was removed from the bed of Sanchez's truck, Bradley did not commit the crime of vehicle prowling when he removed it. The same is not true for the theft of the keys, which required Bradley to enter the interior of the truck to remove them from the ignition. Accordingly, even if we were to conclude that the theft of the keys merged with the crime of vehicle prowling, the theft of the leaf blower would stand.

Bradley also argues that double jeopardy was violated because the crimes merged. "Merger is a judicial doctrine used to determine whether the Legislature intended to impose multiple punishments for an act that violates more than one statute." State v. L.U., 137 Wn. App. 410, 415, 153 P.3d 894 (2007) (citing State v. Eaton, 82 Wn. App. 723, 729, 919 P.2d 116 (1996)). The merger doctrine applies "where the degree of one offense is elevated by conduct constituting a separate offense." State v. Kier, 164 Wn.2d 798, 804, 194 P.3d 212 (2008) (citing State v. Vladovic, 99 Wn.2d 413, 419, 662 P.2d 853 (1983)).

Bradley, relying on State v. Lass, 55 Wn. App. 300, 308, 777 P.2d 539 (1989), argues that the second degree vehicle prowling merged with the third degree theft conviction. In Lass, Division Two held that the crime of second degree vehicle prowling merged with the crime of taking a motor vehicle without permission because the defendant had to unlawfully enter the vehicle in order to take it without permission and no additional steps were required to complete both charges. Bradley similarly argues that second degree vehicle prowling merged with third degree theft because he had to unlawfully enter Sanchez's truck in order to wrongfully obtain the keys and leaf blower. This argument is not persuasive. In L.U., 137 Wn. App. at 416-17, we disagreed with Lass and held that second degree vehicle prowling does not merge with the crime of taking a motor vehicle without permission. In so holding, we noted that the test for applying the merger doctrine is not whether additional steps were necessary to complete both charges, but whether proof of one crime elevates another to a higher

11

degree.[4] L.U., 137 Wn. App. at 416. Proof of second degree vehicle prowling does not elevate the crime of theft to a higher degree. Thus, the merger doctrine does not apply.

### Legal Financial Obligations

Bradley argued that the trial court impermissibly imposed legal financial obligations (LFOs) based on a finding of his ability to pay that was not supported by the record.[5] But Bradley did not object to the imposition of costs at either of his sentencing hearings. Therefore, he has waived his ability to challenge them on appeal.[6] RAP 2.5(a); State v. Blazina, 174 Wn. App. 906, 911, 301 P.3d 492, review granted, 178 Wn.2d 1010, 311 P.3d 27 (2013).

We also agree with the State that the issue is not ripe for review. The defendant may petition the court at any time for remission or modification of the payments on [the basis of manifest hardship]. RCW 10.01.160(4); Baldwin, 63 Wn. App. at 310-11.

> The initial imposition of court costs at sentencing is predicated on the determination that the defendant either has or will have the ability to pay. RCW 10.01.160(3). Because this determination is clearly somewhat "speculative," the time to examine a defendant's ability to pay is when the government seeks to collect the obligation.

---

[4] The Washington Supreme Court affirmed L.U. on other grounds without reaching the double jeopardy issue, noting that the State asked that the charge of second degree vehicle prowling be dismissed. State v. Unga, 165 Wn.2d 95, 113 196 P.3d 645 (2008).

[5] RCW 10.01.160(3) provides that "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

[6] In State v. Bertrand, 165 Wn.App. 393, 395, 267 P.3d 511 (2011), the court allowed a disabled defendant to challenge the imposition of discretionary LFOs on appeal, despite her failure to raise the issue below as required by RAP 2.5(a). We are not compelled to do the same in this case. Blazina, 174 Wn. App. at 911.

12

State v. Smits, 152 Wn. App. 514, 523-24, 216 P.3d 1097 (2009). Bradley may challenge the trial court's imposition of LFOs when the government seeks to collect them.

### Statement of Additional Grounds

In a statement of additional grounds for review, Bradley argues that there was insufficient evidence to convict him of second degree assault. "A person is guilty of assault in the second degree if he or she ... [a]ssaults another with a deadly weapon." RCW 9A.36.021(1)(c). "[S]pecific intent either to create apprehension of bodily harm or to cause bodily harm is an essential element of assault in the second degree." State v. Byrd, 125 Wn.2d 707, 713, 887 P.2d 396 (1995).

Bradley contends that the evidence shows his intention was to get paid, not to create apprehension of bodily harm. He points out that he never tried to hit Sanchez with the bat and ended the chase when Sanchez agreed to pay. But criminal intent may be inferred "from conduct that plainly indicates such intent as a matter of logical probability." State v. Abuan, 161 Wn. App. 135, 157, 257 P.3d 1 (2011). The record shows that Bradley struck Sanchez's truck three times while standing a few feet from Sanchez, then chased Sanchez across the street and around two vehicles while brandishing the bat and demanding money. The evidence was sufficient to support the conviction.

Bradley also argues that the prosecutor made false statements regarding the definition of assault during rebuttal closing argument. "Where, as here, defense counsel does not object to the alleged misconduct, we deem the defendant to have waived the issue on appeal unless the misconduct is 'so flagrant and ill-intentioned that it evinces

13

an enduring and resulting prejudice' incurable by a jury instruction." State v. Larios-Lopez, 156 Wn. App. 257, 260, 233 P.3d 899 (2010) (quoting State v. Gregory, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006)).

During closing argument, defense counsel argued that Bradley did not commit second degree assault because Bradley directed his anger at the truck, not Sanchez. He therefore urged the jury to consider a lesser included offense: "I think if you are inclined to find any crime as it relates to Mr. Bradley, the bat against Mr. Sanchez, it's unlawfully displaying a weapon. . . . This is an intimidation situation involving a weapon which is the lesser included here." VRP (01/18/13) at 455. In rebuttal, the prosecutor argued:

> But let's assume for the sake of argument that he wasn't intending to injure Sage Sanchez, but just to intimidate, as defense counsel says. Fine. It's still assault. And this is very key: Defense counsel told you in their opening statement, there is no assault here because the Defendant never hit Sage, and there is no assault here because the Defendant never got close enough to hit Sage. The defendant, there is no assault here because the Defendant had no intent to hit Sage.
>
> The fact is, let's say that those are all true, and they are true. There is still an assault. What they failed to point out to you is that none of those are elements of the crime. I don't have to prove that he hit Sage. I don't have to prove that he was close enough to hit Sage. I don't have to prove that he did not intend to hit Sage. I only have to prove that he intended to create fear of injury. And that was proven.

VRP (01/18/13) at 463-64.

Bradley contends that the prosecutor relieved the State of the burden to prove his intent beyond a reasonable doubt by implying that intimidation is an element of assault and that his intent was irrelevant. Bradley misunderstands the prosecutor's argument. Viewed in context, it is apparent that the prosecutor responded appropriately

14

to defense counsel's argument by pointing out that the State did not need to prove that Bradley actually intended to injure Sanchez, but only that he intended to create fear of injury.

Affirmed.

WE CONCUR:

_Spearman, C.J._

_Leach, J._

_Becker, J._