[No. 37030-8-I.   Division One.   September 2, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. BARBARA JEAN MORRIS, *Appellant*.

*Kyron J. Huigens*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Mark Stockdale, Deputy*, for respondent.

Cox, J. — Barbara J. Morris appeals her aggravated exceptional sentence for vehicular homicide, vehicular assault, and felony hit and run. She committed these crimes when she struck, in succession, several bicyclists with her car. The trial court erred in imposing the sentence by relying on the factors of multiple current offenses with multiple victims, emotional impact on victims who were not physically injured, and deliberate cruelty. But it did not err by relying on the valid aggravating factor of particular vulnerability of the victims. Because the trial court expressly declined to rule that it would have relied solely

on the valid factor of particular vulnerability to impose this exceptional sentence, we vacate the sentence and remand for resentencing.

Early one evening in October 1994, Morris struck from the rear several bicyclists who were riding together alongside the road as she passed them in her car. She failed to stop for any of the victims. In an unchallenged finding of fact, the trial court found that the bicyclists were exercising all reasonable care and were complying with all applicable traffic laws. Witnesses chased Morris and apprehended her a short time later. Police then arrested her.

David Juarez, the first cyclist that Morris hit, died two days later as a result of the impact with the car. The second cyclist she hit, Truman Jolley, suffered severe injuries, lapsing into a coma. Several other cyclists sustained minor injuries and were treated and released the same evening.

The State charged Morris with one count of vehicular homicide (for the death of Juarez), one count of vehicular assault (for the injury to Jolley), and one count of felony hit and run. The charge included allegations that she was intoxicated when she committed the crimes.[1] She entered an *Alford*[2] plea.

The trial court then sentenced her to an exceptional sentence of 72 months. Each of the components of the sentence is in the middle of the standard range for each offense: 42 months for vehicular homicide, 15 months for vehicular assault, and 15 months for felony hit and run. But the court determined that Morris would serve the

---

[1]The certification for probable cause states that a blood analysis revealed that Morris had a level of 0.14 grams of alcohol per 100 milliliters of blood that evening.

[2]*See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

sentences consecutively, not concurrently. Morris appeals this exceptional sentence.[3]

# I
## Standard of Review

A trial court may impose a sentence outside the standard range if it finds "substantial and compelling reasons" to do so.[4] We may reverse an exceptional sentence only if (1) the trial court's reasons for imposing the exceptional sentence are not supported by the record; (2) as a matter of law, those reasons do not justify an exceptional sentence; or (3) the sentence imposed is clearly excessive or clearly too lenient.[5]

We apply the clearly erroneous standard when reviewing the trial court's findings under the first prong of the test.[6] A finding of fact is clearly erroneous only if no substantial evidence supports it.[7] The second prong, whether factual findings justify an exceptional sentence, is a legal issue. We review that de novo.[8] The *Grewe* test governs this inquiry: first, did the Legislature necessarily consider the aggravating factor in establishing the standard sentencing range, and second, is the aggravating factor sufficiently substantial and compelling to distinguish

---

[3]*See* RCW 9.94A.400(1)(a), which provides, in part, "[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score . . . . *Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.120 and [former RCW] 9.94A.390(2)(f) or any other provision of RCW 9.94A.390.*" (Emphasis added.)

[4]RCW 9.94A.120(2).

[5]RCW 9.94A.210(4); *State v. Alexander*, 125 Wn.2d 717, 722, 888 P.2d 1169 (1995).

[6]*State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991).

[7]*State v. Grewe*, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991).

[8]*Allert*, 117 Wn.2d at 162.

the crime in question from others in the same category?[9] Finally, we review the length of an exceptional sentence for abuse of discretion.[10] A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds.[11]

## II
### Multiple Offenses and Victims

Morris argues that the trial court misapplied the multiple offense policy set forth in RCW 9.94A.400(1)(a) and former RCW 9.94A.390(2)(g). Specifically, she attacks the court's imposition of consecutive rather than concurrent sentences.

The trial court imposed consecutive sentences partially on the ground that Morris committed multiple offenses against multiple victims and that concurrent sentences would be too lenient. The court reasoned that concurrent sentences would be too lenient under former RCW 9.94.390(2)(g) because if it sentenced Morris for vehicular homicide on the basis of an agreed score of three, she would serve no additional time for her other crimes of vehicular assault and felony hit and run. In the trial court's view, such a sentence would be illogical because a defendant, such as Morris, could commit vehicular homicide, flee the scene, and then commit further crimes of vehicular assault and felony hit and run—all without suffering any additional punishment for these latter two crimes.

■ The State properly concedes error as to this portion of the trial court's decision. First, the trial court's conclusion that concurrent sentences are *too lenient* is based on the aggravating factor stated in former RCW

---

[9]*State v. Smith*, 123 Wn.2d 51, 57, 864 P.2d 1371 (1993) (citing *Grewe*, 117 Wn.2d at 215-16).

[10]*Alexander*, 125 Wn.2d at 731.

[11]*Alexander*, 125 Wn.2d at 732 n.28.

9.94A.390(2)(g). That statute provides that a sentencing court may impose an aggravated exceptional sentence where "[t]he operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is *clearly too lenient* in light of the purpose of this chapter, as expressed in RCW 9.94A.010."[12] In short, a trial court may impose an exceptional sentence under former RCW 9.94A.390(2)(g) only where the multiple offense policy fails to arrive at an appropriate sentence based on a properly calculated offender score.

In *State v. Fisher*,[13] our Supreme Court observed that it is proper to rely on this factor when there is some extraordinarily serious harm or culpability resulting from multiple offenses that the presumptive sentence would not punish. But the trial court here did not base its decision on this consideration. Rather, it imposed the additional penalty of consecutive sentences after already enhancing the vehicular homicide sentence based on the increased offender score caused by the two other current offenses. Because the multiple offense policy of RCW 9.94A.400 was fulfilled by the increased offender score and there was no determination by the trial court that there was some extraordinarily serious harm or culpability left unpunished by the presumptive sentence, the court erred by departing from a presumptively concurrent sentence.

While conceding the above, the State nevertheless asserts that it is still proper to rely on former RCW 9.94A.390(2)(g) to justify the exceptional sentence. That statute provides that a trial court may impose an aggravated exceptional sentence when "[t]he operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW

[12]Former RCW 9.94A.390(2)(g) (emphasis added).

[13]108 Wn.2d 419, 739 P.2d 683 (1987) (upholding aggravated exceptional sentence for first degree theft and willful violation of a court order because 50 investors were defrauded of over $1 million). *See also State v. Oksoktaruk*, 70 Wn. App. 768, 774, 856 P.2d 1099 (1993).

9.94A.010." That subsection enumerates six purposes: (1) punishment proportionate to the seriousness of the offenses and the offender's criminal history, (2) just punishment to promote respect for the law, (3) punishment commensurate with that imposed on persons committing similar offenses, (4) protection of the public, (5) rehabilitation of the offender, and (6) frugal use of state resources.[14]

Cases construing the multiple offense aggravating factor limit its application to situations where "the defendant has committed a number of crimes and his high offender score does not result in any greater penalty than if he had committed only one."[15] Those cases are distinguishable because Morris' offender score for each of her three offenses was enhanced by the other two offenses, and her resulting offender score was not high enough for her to avoid penalty for all her offenses.

*Oksoktaruk*,[16] on which the State seeks to rely, concerned an exceptional sentence for vehicular homicide and vehicular assault based on high-speed driving, leading to a collision on a crowded downtown street. The intoxicated driver was not using his headlights on a rainy night and had had near-collisions prior to the collision that gave rise to the charges.[17] That case is factually distinguishable from the one before us. While alcohol was involved here, there are no other factual similarities to *Oksoktaruk*.

Second, the State also properly concedes error with respect to the trial court's decision that injuries to multiple victims here can be a basis for an aggravated exceptional sentence. Former RCW 9.94A.400(1)(a) provides:

> Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses,

---

[14]RCW 9.94A.010.

[15]*State v. Stewart*, 125 Wn.2d 893, 897, 890 P.2d 457 (1995). *See also State v. Smith*, 123 Wn.2d at 56; *State v. Stephens*, 116 Wn.2d 238, 244-45, 803 P.2d 319 (1991).

[16]70 Wn. App. 768.

[17]*Oksoktaruk*, 70 Wn. App. at 774-75.

the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.120 and 9.94A.390(2)(f) or any other provision of RCW 9.94A.390. "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. This definition does not apply in cases involving vehicular assault or vehicular homicide if the victims occupied the same vehicle. However, the sentencing judge may consider multiple victims in such instances as an aggravating circumstance under RCW 9.94A.390.

By its terms, this subsection is inapplicable to Morris. Because the various injured bicyclists were not in the same vehicle, the last sentence of this statutory subsection that refers to "multiple victims" is inapplicable to these facts.[18] The trial court erred by relying on this subsection.

We hold that the trial court improperly relied on Morris' multiple offenses against multiple victims to justify an aggravated exceptional sentence.

## III
### Deliberate Cruelty

Morris also challenges the trial court's reliance on her "deliberate cruelty at the scene of the accident" to justify the exceptional sentence. She argues that no finding of fact supports that conclusion of law. She is correct.

RCW 9.94A.390(2)(a) defines the aggravating factor of deliberate cruelty as occurring when "[t]he defendant's

---

[18]*State v. Danis*, 64 Wn. App. 814, 822, 826 P.2d 1096, *review denied*, 119 Wn.2d 1015 (1992).

conduct during the commission of the current offense manifested deliberate cruelty to the victim." We have construed this factor as follows: "Deliberate cruelty is gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself."[19]

None of the trial court's findings of fact meet that test. The section of conclusion of law 4 giving rise to Morris' specific challenge provides:

> [The exceptional sentence] is mandated . . . by the separate and deliberate offenses represented in each charge, which inherently result either from deliberate cruelty at the scene of the accident or deliberate indifference to the consequences that can foreseeably flow from choosing to consume alcohol in a situation where one knows that he or she will still have access to a motor vehicle and be able to drive thereafter . . . .

The words "deliberate cruelty" in this passage do not invoke RCW 9.94A.390(2)(a). Nor does the record support the contention that Morris "inflict[ed] physical, psychological, or emotional pain as an end in itself."[20]

The State argues that the trial court did not err in this aspect of its analysis because a defendant's especially culpable mental state is a valid basis for an exceptional sentence. For support, it cites *State v. Nordby*,[21] where our Supreme Court upheld the trial court's imposition of an exceptional sentence, relying in part on Nordby's intentional act in grabbing the steering wheel to steer toward the pedestrians. That court reasoned that the requisite mental state for vehicular assault is recklessness or intoxication. Because Nordby acted *intentionally* when he grabbed the steering wheel and turned the car toward the pedestrians, this more culpable mental state than that

---

[19]*State v. Smith*, 82 Wn. App. 153, 162, 916 P.2d 960 (1996).

[20]*Smith*, 82 Wn. App. at 162 (defining "deliberate cruelty").

[21]106 Wn.2d 514, 518-19, 723 P.2d 1117 (1986).

required for conviction was an appropriate aggravating factor for sentencing purposes.[22]

■ The State claims that the trial court's findings include the determination that Morris acted knowingly. Finding of fact 8 states, in part:

> The only evidence is that defendant must have knowingly been involved in several collisions with bicycles after which she deliberately fled, *or*, alternatively, must have place[d] herself before drinking in a position where she would later be able to drive even if she were to consume alcoholic beverages to such a degree as to substantially impair her mental faculties.[23]

The State acknowledges that the above finding is stated in the alternative and both alternatives indicate a degree of culpability no higher than recklessness. The necessary result of that concession is that the factual finding could not support a legal conclusion that Morris' mental state was more culpable than that required to support her convictions for vehicular homicide and vehicular assault. Thus, her mental state was not a proper basis for imposing an aggravated exceptional sentence on the basis of deliberate cruelty.

## IV
### Emotional Impact

Morris claims that the record does not support the trial court's legal conclusion that emotional impact on the victims' companions justifies an exceptional sentence. We agree.

The State cites *State v. Johnson*[24] to support the trial court's reliance on this aggravating factor. That case concerned an exceptional sentence for first degree assault

[22]*Nordby*, 106 Wn.2d at 519.

[23](Emphasis added.)

[24]124 Wn.2d 57, 873 P.2d 514 (1994).

in a drive-by shooting at an elementary school. Our Supreme Court approved the trial court's reliance on the emotional impact that the shooting had on the pupils and their parents based on evidence presented at the sentencing hearing.[25]

■ Here, the trial court concluded that the "victims included not only those physically injured, but those who were part of an identifiable group riding together, and in whose presence the vehicular homicide and assault occurred." Conclusion of law 4 details the trial court's bases for the exceptional sentence, including the presence of "multiple victims at the scene, both those actually hit and those who were part of the identifiable group traveling jointly." But the record contains no evidence of impact on those present at the scene but not physically injured. The verbatim report of proceedings refers to various victim impact letters that the trial court received, but those letters are not part of the appellate record. There is therefore no factual support for this aggravating factor.

## V

### Particular Vulnerability

Morris also claims that the trial court erred by relying on the bicyclists' particular vulnerability. She makes two basic arguments in her brief.

■ Morris first contends that the vulnerability of bicyclists is contemplated in the creation of the crimes of vehicular assault and vehicular homicide as crimes distinct from other types of assault and homicides under the criminal code. Because they are part of the general motor vehicle law, she says, and bicycles are vehicles subject to the same rules of the road as other vehicles, the presumptive sentences applicable to vehicular offenses already reflect the vulnerability of bicyclists. Morris fails to

---

[25]*Johnson*, 124 Wn.2d at 73.

cite any authority for this argument. We do not consider arguments that are not supported by relevant authority.[26]

She also attempts to draw distinctions between the recognized vulnerability of pedestrians to cars[27] from the vulnerability of bicyclists to cars that the State asserts in this case. While conceding the obvious, that "a car outweighs a bicycle," she nonetheless contends that a bicyclist is less vulnerable than a pedestrian because a cyclist "has a much greater capacity to avoid being struck." We reject this novel argument.

RCW 9.94A.390(2)(b) defines the aggravating factor of particular vulnerability: "The defendant knew or should have known that the victim of the current offense was particularly vulnerable . . . ." In *Nordby*, our Supreme Court upheld an exceptional sentence based on this factor. There, in response to his girl friend's assertion that hitting pedestrians was worth two points, Nordby deliberately turned a vehicle toward two pedestrians who were walking their bicycles along the shoulder of the road.[28] That court observed that the victim there had no opportunity to evade the automobile once the car swerved toward her. The court also noted that the victim did not have the additional protection against injury that a second automobile might provide for its driver or passenger.

The same considerations apply here. A bicyclist does not have any additional protection from injury that riding in an automobile might provide. A car approaching from the cyclist's rear places the cyclist in a particularly vulnerable position not only because of the superior weight of the car, but also because opportunities for a bicyclist to evade the car approaching from the rear are more limited.

Morris further argues that the factor does not apply because she did not *know* that the victims were particu-

---

[26]*See State v. Lord*, 117 Wn.2d 829, 853, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992).

[27]*See Nordby*, 106 Wn.2d at 518.

[28]106 Wn.2d at 515.

larly vulnerable. The trial court found that the cyclists were exercising all reasonable care and were complying with all applicable traffic laws. They rode single file. The certificate for probable cause, which the court considered, states in part:

> As David Juarez neared the curb, the right portion of the blue car hit his bike. The force of the impact caused Juarez's rear tire to explode with a loud report and broke the frame of Juarez's bike. The collision sent Juarez flying 152 feet out into the middle of the road. Witnesses to the accident saw Juarez's reflective vest turning as Juarez spun through the air.

Morris either saw or should have seen Juarez before she struck him. The fact that witnesses saw Juarez' reflective vest supports the conclusion that she also saw or should have seen him and knew that he was particularly vulnerable as a cyclist. Moreover, once she hit Juarez and the impact propelled him over one hundred feet to his death, Morris was aware or should have been aware of Jolley and the other cyclists she struck. Thus, she is well within the knowledge prerequisite for the trial court to have properly relied on this factor.[29]

At oral argument, Morris urged that we not broaden the class of persons entitled to protection to which this statute refers to include bicyclists. She suggests that the status of being a bicyclist is insufficient, without more, to permit use of this statutory subsection to enhance a sentence. We disagree.

First, the Legislature has already provided for this aggravating factor to be applied to classes of individuals by virtue of who they are. For example, within the same paragraph of the subsection detailing aggravating circumstances, the statute permits an enhanced sentence to be imposed when the victim is "incapable of resistance due to

---

[29]*See State v. Cardenas*, 129 Wn.2d 1, 12, 914 P.2d 57 (1996) (knowledge of vulnerability implied from presence in residential area).

extreme youth, advanced age, disability, or ill health."[30] No more is required in each of these situations. We see no reason to distinguish between these categories and the category of being a bicyclist on a road under the circumstances of this case.

■ Second, there can be no real debate that a several-thousand-pound motor vehicle approaching a bicyclist places that bicyclist in a particularly vulnerable position. This is particularly true here, where the car approached from the rear. The cyclists were unable to evade the vehicle. Moreover, unlike the occupant of another car, the cyclists had no opportunity to protect themselves against serious injury

## VI
### Real Facts Doctrine

Finally, Morris claims that the trial court's sentence violates the real facts doctrine because the court relied on facts that could have been the subject of other charges.

■ "[T]he 'real facts' concept excludes consideration of either uncharged crimes or crimes that were charged but later dismissed."[31]

In *State v. Tierney*,[32] this court explicitly held

that the real facts doctrine does not preclude reliance on facts that establish elements of additional uncharged crimes to enhance a sentence when those facts are part and parcel of the current offense. The real facts doctrine only bars reliance on those facts wholly unrelated to the current offense or those facts which would elevate the degree of crime charged to a *greater* offense than charged.

Morris' challenge fails.

---

[30]RCW 9.94A.390(2)(b).

[31]*State v. Barnes*, 117 Wn.2d 701, 707, 818 P.2d 1088 (1991).

[32]74 Wn. App. 346, 352, 872 P.2d 1145 (1994), *cert. denied*, 513 U.S. 1172 (1995).

670

■ Although the State expressly requested that it do so, the trial court declined to conclude that it would impose the same sentence based on fewer aggravating factors than it had enumerated, preferring to address that issue on remand, if necessary

We vacate the sentence and remand for resentencing.

COLEMAN and AGID, JJ., concur.

Review denied at 134 Wn.2d 1020 (1998).