IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35230-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRANDON WILLIAM CATE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Brandon Cate appeals after he was convicted for second degree burglary, second degree malicious mischief, and second degree theft. He challenges his convictions for second degree malicious mischief and second degree theft. We affirm those convictions.

He also appeals the trial court's imposition of a consecutive sentence for two separate cause numbers sentenced on the same day. We remand for joint resentencing on the two separate cause numbers for the purpose of recalculating Mr. Cate's correct offender score. If Mr. Cate's correct offender score is 9+ on one or more of his convictions, a consecutive sentence is permissible, provided that sufficient written findings are entered. We additionally remand for the trial court to strike two court costs.

No. 35230-7-III
*State v. Cate*

FACTS

A person broke into the Flying B convenience store in Okanogan County and stole merchandise and cash. In the process of burglarizing the store, the burglar damaged the front door and a glass display case. Two witnesses identified Mr. Cate as a suspect. Law enforcement questioned Mr. Cate, and he eventually confessed to the burglary.

The State charged Mr. Cate with one count of second degree burglary, one count of second degree malicious mischief, and one count of second degree theft.

The parties discussed procedural issues on the morning of trial. One issue discussed was which witnesses the State intended to have testify. When the State said the store owner would testify, Mr. Cate objected. Mr. Cate argued that the store owner was not on the State's pretrial witness list. The State responded that the police report identified the store owner. The police report disclosed the name of the store owner, his discussions with the investigating officer, and the estimated cost of repairing the front door and the glass display case. The trial court determined that Mr. Cate was on notice of the store owner as a potential witness, denied Mr. Cate's motion to exclude, and gave him the choice of continuing the trial. Mr. Cate chose to proceed to trial.

The jury heard the following evidence:

*Sergeant Tony Hawley*

Sergeant Hawley responded to the Flying B because of a reported burglary. Sergeant Hawley spoke with the store clerk, Geetinder Kaur. He asked her what items were taken, the value of those items, and he included those items and their values in his report. The report did not mention missing cash, because at the time, it was not believed that any cash was taken. Ms. Kaur provided Sergeant Hawley with the retail cost of the missing items, which totaled $657. Mr. Cate did not object to this testimony.

Sergeant Hawley also spoke with the owner of the convenience store, Gangadeep Baines. Mr. Baines told the sergeant it would cost $1,200 dollars to repair the front glass door and the glass display case. Mr. Cate did not object to this testimony. Sergeant Hawley took photographs of the damaged items, and those photographs were admitted.

*Geetinder Kaur*

Ms. Kaur was employed at the Flying B gas station at the time of the burglary. Ms. Kaur arrived to work that day and found the front glass door and the display case broken. Ms. Kaur noticed some pipes, "baggies," and other things missing, and relayed the exact information to the officer at the scene. Ms. Kaur confirmed the prices on the plastic baggies, small glass pipes, e-cigarettes, and larger glass pipes. Some scales were

3

missing along with some larger stand-up pipes. Ms. Kaur did not state the values of those items.

### *Malynda Fry*

Ms. Fry is a friend of Mr. Cate because they had a prior dating relationship. On the night of the burglary, Mr. Cate came by her house. After arriving, Mr. Cate changed clothes and then left. When Mr. Cate returned, he had a bunch of pipes and was sweaty. Ms. Fry's house is about four or five blocks from the Flying B.

### *William Taylor*

Mr. Taylor was with Ms. Fry during the night of the burglary. That night, Mr. Cate came by Ms. Fry's house. He later left to get some "glass." Report of Proceedings (RP) at 227. When Mr. Cate returned an hour later, he had baggies, 12 to 13 glass pipes, and possibly a scale.

### *Officer Brian Bowling*

Brian Bowling is an officer with the Omak Police Department. On January 28, 2017, Officer Bowling arrested Mr. Cate pursuant to a warrant. Officer Bowling then transported Mr. Cate back to the police station and began asking him questions about various crimes, including the Flying B burglary. Eventually, Mr. Cate admitted that he broke into the store, broke the inside glass case with a hammer, and took glass pipes,

4

baggies, scales, e-cigarettes, and cash.  At first, Officer Bowling could not remember the exact amount of cash Mr. Cate admitted to taking.  After reviewing his report, Officer Bowling confirmed that Mr. Cate confessed to taking $100 in cash from the store.

The jury unanimously found Mr. Cate guilty of all three charges.

At sentencing, the trial court sentenced Mr. Cate on two matters—this case, and Okanogan County Superior Court cause no. 17-1-00040-8.  In its filed sentencing brief, the State calculated Mr. Cate's offender score on each case scored against the other. Calculated in this manner, Mr. Cate's offender score for each of his three convictions was 9+.  *See* Clerk's Papers (CP) at 35.  In its brief and at the hearing, the State asked the court to impose consecutive sentences for the two cases.  Mr. Cate asked the court to impose concurrent sentences for the two cases.

The State acknowledged the trial court's concern that it probably would not be appropriate to count the scores of each case against the other *and* to enter consecutive sentences and, for this reason, the offender scores on the judgment and sentence were reduced below 9+.  *See* CP at 23.

The court stated it had discretion to impose either a concurrent or a consecutive sentence.  The trial court ordered the two sentences to run consecutively, and explained that a concurrent sentence would not sufficiently punish Mr. Cate for the separate crimes.

5

No. 35230-7-III
*State v. Cate*

Mr. Cate now appeals.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Mr. Cate argues there was insufficient evidence to sustain his convictions for second degree malicious mischief and second degree theft.

When a defendant challenges the sufficiency of the evidence, he or she admits the truth of all of the State's evidence. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). "Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *Id.* "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against" Mr. Cate. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

1.    *Second Degree Malicious Mischief*

To find Mr. Cate guilty of second degree malicious mischief, the jury had to find beyond a reasonable doubt that Mr. Cate caused physical damage to the front door and display case exceeding $750. Here, Mr. Cate admitted to damaging those two items, the store owner told Sergeant Hawley that the cost of repairing those two items was $1,200, and photographs of the damaged items were admitted.

6

Mr. Cate first argues that Sergeant Hawley's testimony was unreliable because it was hearsay. This is true. But the testimony was admitted without objection.

Mr. Cate next argues that the State failed to offer a sufficient foundation that the owner knew the repair cost of the damaged items. This also is true. But again, the testimony was admitted without objection.

Mr. Cate next argues that the imprecise nature of the repair estimate prevents a jury from finding that the State proved beyond a reasonable doubt that the damage to the two items exceeded $750. Mr. Cate cites *State v. Williams*, 199 Wn. App. 99, 398 P.3d 1150 (2017).

There, law enforcement apprehended Lelbert Williams who had recently burgled a number of items from the victim's house. *Id.* at 102. The stolen items were a laptop computer, two rings, a Bluetooth speaker, a jacket, and running shoes. *Id.* at 102-03. At trial, the State asked the victim to provide a "rough estimate" of the value of the stolen items. *Id.* at 103. The victim answered, "'I would say roughly $800.'" *Id.* In that case, there was no evidence of when the victim purchased the various items, the original purchase price of the items, or the age or the condition of the items. *Id.* at 111. Nor was it clear whether the value testified to was the original purchase price or the market value at the time the items were stolen. *Id.* We held that the victim's vague testimony was

7

insufficient for a jury to find beyond a reasonable doubt that the total value of the items exceeded $750. *Id.*

Here, the owner told Sergeant Hawley that the cost to repair the damaged door and display case totaled $1,200. The cost to repair equates to damages. What distinguishes this case from *Williams* is that the estimate substantially exceeds the dollar amount of the required proof. Here, the estimate was $450 over the required proof; in *Williams*, it was only $50. We conclude there was sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that the damage to the front door and display case totaled more than $750.

### 2. *Second Degree Theft*

To find Mr. Cate guilty of second degree theft, the jury had to find beyond a reasonable doubt that Mr. Cate obtained property of another in excess of $750.

Here, the jury heard testimony about the items taken by Mr. Cate. The store clerk told Sergeant Hawley what items were missing and the retail price of the items. Sergeant Hawley wrote down the items and the prices given by Ms. Kaur, and incorporated them into his official report. Sergeant Hawley then reviewed his report, added the items and

values, and testified that the value of the stolen items totaled $657.[1] Sergeant Hawley

testified that amount did not include cash. Officer Bowling testified that Mr. Cate

admitted to taking $100 cash along with the other items. When considering this evidence

in the light most favorable to the State, the $657 retail cost of the stolen merchandise plus

the $100 in stolen cash totals $757. A rational trier of fact could have found beyond a

reasonable doubt that Mr. Cate obtained property of another in excess of $750.

Mr. Cate first argues that the State was not entitled to add the $100 in stolen cash

to the $657 in stolen merchandise because the cash was not listed in the charging

document. Mr. Cate argues he has "'the right to be informed of the charges against him

and to be tried only for offenses charged.'" Appellant's Br. at 18. Here, the State

informed Mr. Cate he was charged with second degree theft, in addition to other crimes,

and was tried for those crimes only. In addition, Mr. Cate was not surprised at trial by

Officer Bowling's testimony that he admitted to taking $100 in cash. Nor was Mr. Cate

surprised at trial by the State arguing that the merchandise and cash totaled over $750.

We conclude Mr. Cate was sufficiently informed of the charges against him.

---

[1] Mr. Cate claims that Ms. Kaur's testimony of what items were missing only adds up to $451.86. This is misleading. Ms. Kaur gave testimony to some items that were stolen and their value. *See, e.g.*, (small baggies, small pipes, e-cigarettes, large pipes). These are the values Mr. Cate added up to reach $451.86. However, Ms. Kaur also testified that other items were stolen.

Mr. Cate also argues it was improper to consider the $100 in cash because the corpus delicti is not established for this evidence. "[C]orpus delicti is a corroboration rule that 'prevent[s] defendants from being unjustly convicted based on confessions alone.'" *Cardenas-Flores*, 189 Wn.2d at 252 (quoting *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010)). An incriminating statement from a defendant, by itself, is not sufficient to establish that a crime took place. *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006). "'[T]he State must present other independent evidence . . . that the crime a defendant *described in the* [*confession*] actually occurred.'" *Cardenas-Flores*, 189 Wn.2d at 252 (quoting *Brockob*, 159 Wn.2d at 328). Similar to a sufficiency of the evidence challenge, under the corpus delicti rule, the court will view the evidence in the light most favorable to the State. *State v. Aten*, 130 Wn.2d 640, 658, 927 P.2d 210 (1996).

Washington is among a minority of states that does not follow the more relaxed federal rule that requires the State to establish only that the incriminating statement is trustworthy. *Brockob*, 159 Wn.2d at 328. The independent evidence required to satisfy the corpus delicti need not be sufficient to support a conviction by itself, "but it must provide prima facie corroboration of the *crime described in a defendant's incriminating statement*." *Id.* "Prima facie corroboration of a defendant's incriminating statement

10

exists if the independent evidence supports a 'logical and reasonable inference' of the facts sought to be proved." *Id.* (quoting *Aten*, 130 Wn.2d at 656).

Mr. Cate was arrested and interviewed. During this interview, Officer Bowling asked Mr. Cate about the Flying B burglary, and Mr. Cate confessed that he committed the burglary. Specifically, Officer Bowling testified that "[h]e told me that he was responsible for it, that he'd broke the glass to the—door, and then—broke the glass case inside with the hammer, and then took some cash, some glass pipes, some baggies, and scales, and some e-cigarettes." RP at 241. Officer Bowling did not have an independent recollection of how much cash Mr. Cate stated that he took, but after reviewing his own report, Officer Bowling affirmatively stated it was $100. The State provided more corroborating evidence of this burglary and theft.

The State provided photographic evidence that matched what Mr. Cate described in his confession. The jury heard from Ms. Kaur, the gas station attendant who arrived at work and saw the scene as Mr. Cate described it. Sergeant Hawley testified that he arrived on scene and documented the items that were missing—small baggies, 6 small glass pipes, 6 larger glass pipes, 15 e-cigarettes, 3 scales, and 4 self-standing glass smoking devices. These items were largely echoed during Ms. Kaur's testimony. These were the same items Mr. Cate admitted to stealing. The State admitted photographic

11

evidence of a hammer being left at the scene—which correlates to Mr. Cate's admission

to Officer Bowling of how he broke the glass case. Furthermore, the State provided two

eyewitnesses who testified to circumstantial evidence that Mr. Cate committed the crime

at the Flying B on the specific date. The State did not need to provide independent

evidence that Mr. Cate stole $100 cash. That is not Mr. Cate's crime, merely a part of it.

The State was required to corroborate the crime described, not every detailed manner in

which it was committed. We find the burden was met. The State provided evidence that

supports a "logical and reasonable inference" that Mr. Cate committed the theft and stole

$100 along with other items.

      B.     INEFFECTIVE ASSISTANCE OF COUNSEL

      Mr. Cate alleges that he was denied his Sixth Amendment to the United States

Constitution right to effective assistance of counsel. Specifically, he claims his counsel

was ineffective for not objecting to Sergeant Hawley's testimony of what the store owner

told him and what the store clerk told him.

      In order to protect a defendant's right to counsel, a defendant has the right to

receive effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104

S. Ct. 2052, 80 L. Ed. 2d 674 (1984). An allegation of ineffective assistance of counsel is

a mixed question of law and fact that we review de novo. *Id.* at 698. To determine

12

whether counsel provided effective assistance the courts apply a two-pronged test: (1) whether counsel's performance was deficient, and (2) whether that deficient performance prejudiced the defendant to an extent that changed the result of the trial. *Id.* at 687. We need not analyze the first prong of the test if the evidence fails to establish the second prong. *Id.* at 697. We conclude that the present record is insufficient for Mr. Cate to establish prejudice, i.e., that deficient performance changed the result of the verdict.

Had defense counsel objected to Sergeant Hawley's hearsay testimony, the trial court would have sustained the objections. The State would then have called the store owner to testify and would have asked more questions of the store clerk (who did testify). We do not know what the store owner would have said. The store owner may have testified consistent with what he told Sergeant Hawley. Similarly, we do not know what the store clerk would have said had she been asked about all of the items stolen and their retail prices. For this reason, we cannot determine whether defense counsel's failure to object changed the result of the verdict. If Mr. Cate has favorable evidence outside the present record on this issue, his remedy is to file a personal restraint petition. *State v. Turner*, 167 Wn. App. 871, 881, 275 P.3d 356 (2012).

C.     CONSECUTIVE SENTENCES

Mr. Cate argues the trial court violated the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, when it imposed consecutive sentences on two different cases sentenced on the same day.  Statutory interpretation of the SRA is a question of law that we review de novo.  *State v. Conover*, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015).

A defendant sentenced for multiple convictions on the same day must receive concurrent sentences unless there is a finding of an exceptional sentence by the court.

> Except as provided in (b), (c), or (d) of this subsection, whenever a person is to be sentenced for two or more *current offenses*, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score . . . .  Sentences imposed under this subsection shall be served concurrently.  Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535.

RCW 9.94A.589(1)(a) (emphasis added).

"Current offenses" "is defined functionally as convictions entered or sentenced on the same day." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 507-08, 301 P.3d 450 (2013).  Mr. Cate's sentence for this case (Okanogan County Superior Court cause no. 17-1-00039-4) and his other case (Okanogan County Superior Court cause no. 17-1-00040-8) were "current offenses" because they were sentenced on the same day. *Id.*  The

14

sentences therefore were required to be concurrent unless authorized by the exceptional

sentence provisions of RCW 9.94A.535.

RCW 9.94A.535, states "[a] departure from the standards in RCW 9.94A.589(1)

and (2) governing whether sentences are to be served consecutively or concurrently is an

exceptional sentence subject to the limitations in this section . . . ." The sentencing court

sentenced Mr. Cate to consecutive sentences and put its reason on the record:

> The court has discretion today to run these concurrently . . . . I'm not
> going to do that . . . .
> . . . And number two, it's not appropriate because if you think about
> it, if I impose concurrent sentences, that means for the second set of
> charges, the second things that you did a month later, in effect there's no
> penalty. If these run together at the same time then you're just being
> penalized in effect for the first things that you did a month earlier, and
> there are no penalties for what you did a month later. And that's not
> appropriate.
> . . . But they're separated in time, in my view, sufficiently such that
> they need to be sentenced separately and thus consecutively.

RP at 321-22.

This reason tracks RCW 9.94A.535(2)(c), which allows a court to consider and

impose an exceptional sentence if "[t]he defendant has committed multiple current

offenses and the defendant's high offender score results in some of the current offenses

going unpunished."

15

In *State v. Morris*, 87 Wn. App. 654, 943 P.2d 329 (1997), we construed

RCW 9.94A.535 (formerly RCW 9.94A.390). There, the defendant was charged with

vehicular homicide, vehicular assault, and felony hit and run where she struck several

bicyclists. *Id.* at 657. At sentencing, the court imposed an exceptional sentence partially

because Morris committed multiple offenses against multiple victims. *Id.* at 660. The

court reasoned that Morris would serve no additional time on the other crimes if

sentenced concurrently. *Id.* We held that an exceptional sentence based on multiple

crimes was not warranted:

> Cases construing the multiple offense aggravating factor limit its
> application to situations where "the defendant has committed a number of
> crimes and his high offender score does not result in any greater penalty
> than if he had committed only one." Those cases are distinguishable
> because Morris' offender score for each of her three offenses was enhanced
> by the other two offenses, and her resulting offender score was not high
> enough for her to avoid penalty for all her offenses.

*Id.* at 662 (footnote omitted) (quoting *State v. Stewart*, 125 Wn.2d 893, 897, 890 P.2d 457

(1995)).

At sentencing, the State conceded that the trial court should not score both cases

against the other. This resulted in Mr. Cate's offender score being reduced from a 9+ on

all of his convictions. But those cases were sentenced on the *same day*, and therefore

were "current offenses." RCW 9.94A.589(1)(a). RCW 9.94A.589(1)(a) required each

16

felony conviction entered that day to be counted as a current offense and scored against the other case. Although the State conceded otherwise at the sentencing hearing, we are not required to accept an erroneous concession of law. *Gold Star Resorts v. Futurewise*, 167 Wn.2d 723, 734, 222 P.3d 791 (2009). If Mr. Cate's correct offender score on one or more convictions was 9+, RCW 9.94A.535(2)(c) authorized the trial court to impose consecutive sentences for the separate cases.

But the trial court's verbal findings were not sufficient. Written findings are required. "Allowing courts to ignore the written findings requirement would . . . run contrary to the SRA's explicit statutory purpose of 'mak[ing] the criminal justice system accountable to the public.'" *State v. Friedlund*, 182 Wn.2d 388, 395, 341 P.3d 280 (2015) (alteration in original) (quoting RCW 9.94A.010). "Without written findings, the Sentencing Guidelines Commission and the public at large could not readily determine the reasons behind the exceptional sentences, greatly hampering the public accountability that the SRA requires." *Id.*

Because Mr. Cate might wish to challenge his offender score, or again argue against a consecutive sentence, we order a combined resentencing hearing with Okanogan County Superior Court cause no. 17-1-00040-8 so he can be heard. If Mr. Cate's offender

17

score truly is 9+ on any of his convictions, and the trial court enters appropriate written findings, a consecutive sentence is permitted.

### D.     APPELLATE COSTS

Mr. Cate requests that we deny the State an award of appellate costs in the event the State substantially prevails.  We deem the State the substantially prevailing party.  If the State seeks appellate costs, we defer the award of appellate costs to our clerk/administrator or commissioner in accordance with RAP 14.2.

### E.     CRIMINAL FILING FEE AND DEOXYRIBONUCLEIC (DNA) FEE

House Bill 1783, which became effective June 7, 2018, prohibits trial courts from imposing discretionary legal financial obligations (LFOs) on defendants who are indigent at the time of sentencing.  LAWS OF 2018, ch. 269, § 6(3); *State v. Ramirez*, 191 Wn.2d 732, 745-47, 426 P.3d 714 (2018).  This change to the criminal filing fee statute is now codified in RCW 36.18.020(2)(h).  As held in *Ramirez*, these changes to the criminal filing fee statute apply prospectively to cases pending direct appeal prior to June 7, 2018. *Ramirez*, 191 Wn.2d at 747.  Accordingly, the change in law applies to Mr. Cate's case. Because Mr. Cate is indigent on appeal, the $200 criminal filing fee should be struck pursuant to *Ramirez*.

The change in law also prohibits the collection of a DNA fee when the State has previously collected the offender's DNA as a result of a prior conviction. LAWS OF 2018, ch. 269, § 18. Mr. Cate has previous felony convictions. Therefore, the DNA testing fee should be struck as well.

Affirmed but remanded for joint sentencing hearing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Pennell, J.

19